# Commonwealth *versus* McCombs.— Duff's Appeal.

1. When one is acting as an officer under the apparent authority of an Act of Assembly his title to the office cannot be assailed collaterally.

2. An Act of Assembly, although unconstitutional, is sufficient to give color of title, and an officer acting under it is an officer de facto.

3. The Act of February 3d 1867, creating the office of Assistant District Attorney for Allegheny County, is constitutional.

4. The office of District Attorney is not one of the offices termed constitutional.

5. The legislature may modify the duties of a constitutional office and transfer some of them.

6. Article 6, section 9, of the Constitution was not intended to put offices created by the legislature beyond the control and regulation of the creating power; it means protection of the public and nothing more.

November 21st 1867. Before Thompson, Strong, Read and Agnew, JJ. Woodward, C. J., absent.

Appeal from the decree of the Court of Quarter Sessions of *Allegheny county:* No. 154 to October and November Term 1867.

This appeal was by Levi B. Duff from the decree of the court taxing the costs on an indictment, Commonwealth against George McCombs, for obtaining money on false pretences. The defendant was acquitted, and the prosecutor directed to pay the costs. In the bill of costs the clerk taxed $3.33 to the appellant, who was district attorney, and $1.67 to J. W. Riddell, who had been appointed district attorney under the Act of February 3d 1867; " creating the office and defining the duties of assistant district attorney for the county of Allegheny."

The 1st, 2d and 3d sections provide for the appointment and

[Commonwealth *v.* McCombs.]

the commissioning of an assistant district attorney for Allegheny county for three years, and providing that his qualification, &c., shall be the same as in the case of district attorney.

The 4th and 5th sections are :—

" 4. The fees of the assistant district attorney for said county shall be taxed and allowed out of the fees, as now allowed by law, to the district attorney of said county, two-thirds of all said fees, costs and allowances in each and every case, action and proceeding whatsoever, to be taxed for the use of the district attorney, and the remaining one-third thereof to be taxed, allowed and collected for the separate use and benefit of said assistant district attorney.

" 5. It shall be the duty of said assistant district attorney to attend to all preliminary hearings in criminal cases arising in said county, when the public interest may require, to prepare all bills of indictment for offences cognisable in the courts having jurisdiction thereof within said county, and submit the same to the grand jury, with the Commonwealth testimony, and to affix to said bill of indictment the name of the district attorney : Provided, That nothing therein contained shall interfere with the right of the district attorney to prefer a bill of indictment ex-officio, as heretofore, when proper occasion may arise."

Mr. Duff excepted to the clerk's taxation, which having been affirmed by the Court of Quarter Sessions (Stowe, A. J.), he appealed to the Supreme Court, and assigned the decree of the court of error.

*L. B. Duff* and *R. & S. Woods,,* for appellant, cited Act of February 3d 1867, Pamph. L. 140 ; Const. of Penna. Art. 6, § 9, Purd. 21 ; Acts of May 3d 1850, § 1, Pamph. L. 651, April 13th 1859, § 1, Pamph. L. 617, Purd. 333, 334, pl. 1, 9, 5 ; Commonwealth *v.* Sutherland, 3 S. & R. 145, 147 ; Commonwealth *v.* Bussier, 5 Id. 462 ; Commonwealth *v.* Shaver, 3 W. & S. 340 ; Const. of Penna. 8 Art. 21 ; Riddle *v.* Bedford Co., 7 S & R. 386, 395 ; Conner *v.* New York, 2 Sandf. 356 ; Hoke *v.* Henderson, 4 Devereux 1–17 ; Warner *v.* People, 7 Hill 81.

*R. B. Carnahan,* for appellee, cited Act of February 3d 1867, *supra ;* Clark *v.* Commonwealth, 5 Casey 129 ; Burrell's Case, 7 Barr 34 ; Riddle *v.* Bedford Co., *supra ;* Turnpike Co. *v.* McConaby, 16 Id. 144 ; Keyser *v.* McKissan, 2 Rawle 139 ; Kingsbury *v.* Ledyard, 2 W. & S. 37 ; Murphy *v.* Farmers' Bank, 8 Harris 415 ; Act of 14th June 1836, § 2, Pamph. L. 621, Purd. 832, pl. 2 ; Const. of Penna. Art 6, § 8 ; Butler *v.* Penn'a., 10 How. 418 ; Commonwealth *v.* Bacon, 6 S. & R. 322 ; Commonwealth *v.* Mann, 5 W. & S. 418 ; Barker *v.* Pittsburg, 4 Barr 51 ; Conner *v.* New York, 2 Sandf. 356; Warner *v.* People, 7 Hill 81.

The opinion of the court was delivered, January 7th 1868, by

STRONG, J.—This is an appeal from a taxation of costs.   The appellant is the district attorney of the county, and the appellee is the assistant district attorney, holding his office under an Act of Assembly passed on the 3d of February 1867, entitled "An act creating the office and defining the duties of assistant district attorney for the county of Allegheny."   The 4th section of this act directs that the "fees of an assistant district attorney shall be taxed and allowed out of the fees, as now allowed by law, to the district attorney of said county ; two-thirds of all such fees, costs and allowances in every case, action and proceeding whatsoever to be taxed for the use of the district attorney, and the remaining one-third thereof to be taxed, allowed and collected for the separate use and benefit of said assistant district attorney." An indictment having been tried in the Quarter Sessions with a verdict of not guilty, the clerk taxed the costs as directed by the Act of Assembly, dividing the attorney fee of $5 between the district attorney and the assistant district attorney, in the proportion of two-thirds to the former and one-third to the latter.   On appeal, the Court of Quarter Sessions confirmed the taxation, and the district attorney now appeals to this court, insisting that the Act of Assembly is unconstitutional, and therefore that there is legally no such officer as an assistant district attorney, to whom one-third of the attorney fee can be allowed.

The mode of raising this question is most extraordinary.   The case is absolutely without precedent.   Ordinarily when one is exercising the duties of a public office, and claiming its emoluments without right, the remedy is a writ of quo warranto. When he is acting under the apparent authority of an Act of Assembly, his title to the office is not to be assailed collaterally.   This I understand to have been again and again decided.   An Act of Assembly, even if it be unconstitutional, is sufficient to give color of title, and an officer acting under it, is an officer *de facto :*  See Clarke *v.* Commonwealth, 5 Casey 129, and the cases therein cited.   Speaking for myself, I would hold that the question which the appellant seeks to raise cannot be raised in this form of proceeding.   And this, not because I have any doubts in regard to the constitutionality of the Act of Assembly of February 3d 1867. I have none.

The argument of the appellant is that the act is unconstitutional because it transfers the duties and emoluments of the office of district attorney to another.   The 5th section makes it the duty of the assistant district attorney to attend all preliminary hearings in criminal cases in the county when the public interest may require, to prepare all bills of indictments for offences cognisable in the courts having jurisdiction thereof within said county, and submit the same to the grand jury, with the Commonwealth's

[Commonwealth v. McCombs.]

testimony, and to affix to said bills of indictment the name of the district attorney. This is followed by a proviso that nothing in the section contained shall interfere with the right of the district attorney to prefer a bill of indictment ex-officio, as heretofore, when proper occasion shall arise ; and the 6th section repeals all laws and parts of laws inconsistent with the act. It is this 5th section which is supposed to be in conflict with the Constitution. It is this part of the act which, it is argued, takes away partially at least the office of the appellant by transferring its duties to another, and this, it is said, is prohibited by the 9th section of the 6th article of the Constitution, which reads as follows : " All officers for a term of years shall hold their offices for the terms respectively specified only on the condition that they shall so long behave themselves well, and shall be removed on conviction of misdemeanor in office or of an infamous crime."

Before entering upon a consideration of this constitutional provision, it is proper to remark, if the appellant be correct in his position that the 5th section of the Act of Assembly does take away his office and give it to another, and if the legislature is incompetent to do that, it by no means follows that the 4th section and those which precede it are unconstitutional. And it is the 4th section that gives to the assistant district attorney a right to one-third of the attorney fee prescribed by law as a part of the costs in criminal proceedings. It is not contended, and certainly it cannot be with success, that anything in the Constitution prohibits a legislative provision for the election of an assistant district attorney. Nor is it insisted that it is beyond the power of the legislature to reduce fees of a district attorney while he is in office, and give what is taken away another direction. It is evident, therefore, that the appellant has made no progress toward sustaining his appeal, if he has made out that the 5th section of the Act of 1867 is invalid.

The office of district attorney is not one of those offices which are usually denominated constitutional. Unlike that of sheriff or coroner, it is not mentioned in the Constitution, and no provision is made therein for the election or appointment of such an officer. The office had no existence until it was created by the legislature by force of the Act of Assembly of May 3d 1850. That act directed that such an officer should be chosen in each county, to hold his office for the term of three years, and it defined his duties to be substantially those which had before that time been performed by a deputy attorney-general. Not having been mentioned by the Constitution, the legislature was left with unrestricted power to prescribe what the duties of the office should be, what the length of its tenure, what its emoluments, and how it should be filled. Having the power to create, they have also the power to regulate, and even destroy. Undoubtedly the legislature may

at any moment repeal the Act of 1850, and abolish the office. They may provide a substitute for it. Constitutional offices are in some respects beyond legislative control. In most cases their tenure, and the mode of filling them, is prescribed by the fundamental law. Yet even in regard to those it has always been understood the legislature has power to modify the duties of the office, and transfer some of them. Even the general jurisdiction of a court may be limited, and the duties belonging to one judge may be devolved upon another. And much more are offices created by the legislature within its power. The compensation which was allowed at the beginning of an incumbent's term, may be diminished or taken wholly away: Commonwealth *v.* Bacon, 6 S. & R. 322. See also Barker *v.* The City of Pittsburg, 4 Barr 51, Conner *v.* City of New York, 2 Sand. Sup. Ct. Rep. 356, and Butler *v.* Penn'a., 10 How. 418. And the duties of the office may be increased or diminished. It has been the constant practice of the legislature of this state and of others, to make changes in the duties of merely statutory officers, and hitherto it has not been supposed that such changes violate any fundamental law. If they cannot be made, the office must be regarded as for the benefit of the incumbent, rather than for that of the public. I find no authority in conflict with this. The case of Warner *v.* The People, 7 Hill 81, upon which the appellant relies, has no applicability. It bears only upon the mode of selection of an officer. The Constitution of New York ordained that sheriffs and clerks of counties, including the register and clerk of the city and county of New York, should be chosen by the electors of the different counties. The clerk of the city and county of New York had always been the clerk of the Court of Common Pleas. He was so when the Constitution was adopted, and continued to be until 1843, when the legislature enacted that the clerk of the Court of Common Pleas should be appointed by the court. This was held to be unconstitutional, not because it divided the duties of the office, but because it took the choice of the officer from the electors, and gave it to the court. The case decides nothing more. It was an information in the nature of a quo warranto.

Then if the legislature had no right to confer upon the assistant district attorney some of the powers and duties that before the 3d of February 1867 had belonged to the office of district attorney, or, in other words, if they could not transfer some of the powers and duties of the district attorney to another officer, it must be solely because of the 9th section of the 6th article of the Constitution, already quoted. And indeed no other reason is given for a denial of such legislative power. Whether that article applies to officers not mentioned in the Constitution, but for whose election or appointment and duties the legislature is author-

[Commonwealth v. McCombs.]

ized to provide, or whether it applies only to what are denominated constitutional officers, as distinguished from those that are merely statutory, it is needless now to discuss. I think it applies to both classes of officers. But the use which the appellant attempts to make of it is a great perversion of its meaning. It was never intended to put offices created by the legislature beyond the control and regulation of the creating power. It was not intended to ordain that an office for a term of years, once made, should not be modified or abolished, while the term remained unexpired. If it was, it must work serious embarrassments, and compel great public mischiefs. It is too evident to admit of any doubt, that its purpose and meaning were not to protect incumbents of office in the enjoyment of their offices. That was done, so far as deemed necessary, by other provisions of the Constitution. This section means protection to the public, and it means nothing more.

The 1st section of the 6th article declares that sheriffs and coroners shall be chosen and hold their offices for three years, if they shall so long behave themselves well. The 3d section declares that prothonotaries of the Supreme Court shall be appointed by the said court, for the term of three years, *if they shall so long behave themselves well.* It also declares that prothonotaries and clerks of other courts, recorders of deeds and registers of wills, shall be elected and hold their offices for three years, *if they so long behave themselves well.* Thus far the tenure of all the officers named is ordained to be conditioned on good behavior. Then comes the 6th section, which provides for an annual election of a state treasurer. Then the 7th provides for the election of justices of the peace and aldermen to hold office five years. Then follows the 8th, which ordains that all officers whose election or appointment is not provided for in the Constitution, shall be elected or appointed as directed by law. In the 6th, 7th and 8th sections nothing is said respecting the conditions upon which the officers named in them shall hold office, and the 8th section leaves to the legislature to determine for what length of time the officers shall hold, for whose election or appointment provision may be made by law. But, to guard the public against the incumbency of any officer who may misbehave, the 9th section ordains that all officers, though elected or appointed for a term of years, shall hold their offices only on condition that they behave themselves well. The fact that they hold for a term of years shall not entitle them to retain their offices if they misbehave themselves. They shall be removed on conviction of misbehavior or of any infamous crime. The article then is simply a condition of tenure, and consequently it is not a prohibition of anything which the legislature attempted to do by the Act of February 3d 1867. It follows that even if the question sought to be raised

by the appeal can be considered in this form of proceeding, the appellant has no case.

The appeal is dismissed at the costs of the appellant.