## Collins et al. v. Barton et al.

*Hiram M. Drake* and *T. A. Sampson*, for petitioners.

*T. C. Cochran*, for controller.

*Nathan Routman*, for county commissioners.

ROWLEY, P. J., June 27, 1941.—This matter is before the court upon a petition for declaratory judgment.

The petition of Arthur Collins, Jerry McIntire, and Norris Huey sets out that:

1. They were elected auditors for Mercer County, Pa., on November 7, 1939, for a term of four years commencing on the first Monday of January 1940.

2. That they entered upon their duties and have been continuously engaged thereon since the first Monday of January 1940.

3. Upon the date of their election, as well as upon the date they assumed office, Mercer County was classified as a sixth class county by the acts of assembly then in force.

4. Due to an increase in population of the county beyond 100,000, as disclosed by the Federal Decennial Census of 1940, the Governor of Pennsylvania, on January 3, 1941, proclaimed Mercer County to be a fifth class county.

5. In pursuance of the new classification of the county, the Governor of Pennsylvania appointed Dunham Barton controller of said county, and he assumed the duties of his office February 17, 1941.

6. The controller has notified the county auditors that their duties and their compensation would cease May 17, 1941.

7. Petitioners are at present engaged in auditing the county records for the fiscal year 1940, and have completed the offices of clerk of courts, sheriff, district attorney, farm bureau, bureau of elections, jail, institutional district, and the county bond book. There remain to be audited the offices of recorder, prothonotary, treasurer, schools, commissioners, and court house.

8. The business transacted by the county officials from the first Monday of January 1941 to February 17, 1941, has not been audited.

Petitioners pray the court to determine: (a) The rights, status, duties, and other legal relations of petitioners with relation to the remainder of the term for which they were elected; (b) their rights, duties, etc., with relation to the county audit for the fiscal year 1940; and (c) their rights and duties with relation to the county audit for the period from the first Monday of January 1941 to February 17, 1941.

The county commissioners filed an answer admitting the principal averments of the petition, and prayed the court to decide the following questions:

(a) Can the legislature abolish the office of auditor of Mercer County during the elective term of said officials?

(b) If so, can the auditors be deprived of emoluments of said office during the remainder of their term?

(c) If not, to what compensation are they entitled?

(d) If the office of auditor was abolished on May 17, 1941, what are the duties and responsibilities of the county commissioners and the controller with respect

to completing the audit for the year 1940, and 1941 to February 17, 1941?

The controller filed an answer, averring, inter alia, that on April 26, 1941, the controller called the auditors' attention to the following provision of law:

"Whenever the office of controller is established in any county under the provisions of the preceding section of this act, or by a change in class of such county, the Governor shall appoint a suitable person to act as controller of said county until his successor in office is duly elected and installed. Upon the appointment of a controller, as provided in this section, the county auditors then in office shall proceed to audit all accounts as is now or may hereafter be required by law, and shall file a report of such audit with the controller so appointed, not later than three months after the controller assumes his office, whereupon the said office of county auditor shall be abolished and cease to exist in said county": Act of May 2, 1929, P. L. 1278, art. III, sec. 137, 16 PS §137.

The controller further avers that he advised the auditors that the above-quoted law would prevent him, after May 17, 1941, from approving any salary warrants for their services.

The controller further avers that the auditors have failed to comply with the law requiring them to file a report with the controller, not later than three months after the controller assumed office.

The controller prays for judgment: (1) That it was the duty of the auditors to audit the accounts of all offices, etc., of Mercer County for the period from January 1, 1940, to February 17, 1941, and to file their report with the controller not later than May 17, 1941; (2) that the auditors have failed entirely to perform their duties imposed upon them by the laws above quoted; and (3) that the office of county auditor was abolished and ceased to exist in Mercer County on May 17, 1941.

Apparently all counsel have agreed that no technical objection should be raised as to the form of the remedy or the right of the auditors to have the questions involved determined in a proceeding for a declaratory judgment. We, therefore, proceed to the substantial questions at issue.

In considering the right of a public officer to retain his office, it must be borne in mind that the law makes a sharp distinction between public offices which are prescribed by the Constitution of Pennsylvania, and public offices which are created by the act of the legislature. The former stand upon more secure footing.

The county auditors rest their claim to the office upon constitutional grounds. That is to say, they contend that The General County Law of May 2, 1929, P. L. 1278, which assumes to abolish the office of county auditor, is unconstitutional for three reasons:

I. Because the title of that act offends article III, sec. 3, of the Constitution of Pennsylvania, which provides that "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

II. Because abolition of the office of county auditor would offend article III, sec. 13, of the Constitution, which provides that "No law shall extend the term of any public Officer, or increase or diminish his salary or emoluments, after his election or appointment."

III. Because the office of county auditor is created by the Constitution, and, therefore, cannot be abolished by a statute.

We shall consider each of these questions in the above order.

I. The title to The General County Law of 1929 was assailed in Retirement Board of Allegheny County v. McGovern et al., 316 Pa. 161, for the precise reason now urged by the instant petitioners. There the Supreme Court ruled the matter against the contention of the present petitioners, saying (p. 165) :

"But we have frequently held that the title to an act need name only the real subject of the legislation, and that it need not index all the subdivisions thereof, nor any matters that may be fairly related to it. The act is entitled a general county law. The subject is designated with clearness and is sufficient to put one on inquiry into the body of the act concerning any matter or thing relating to county government. This would include any relevant subject which, prior to the enactment of the general county law, had been legislatively considered as part of the government of counties and all extensions thereof normally developed therefrom."

II. Does The General County Law of 1929, in attempting to abolish the office of county auditor, run counter to the constitutional prohibition against diminishing the salary of a public officer during his term of office?

Whether the county auditor be a constitutional office, or only a statutory office, the legislature may not diminish the salary of the officer during his term: Commonwealth ex rel. v. Moffitt, 238 Pa. 255; Commonwealth ex rel. v. Moore, 266 Pa. 100. But the legislature may abolish a statutory office, thus depriving the officer of all compensation, notwithstanding the constitutional provision in article III, sec. 13, that the compensation shall not be diminished during his term of office.

This section of the Constitution does not prohibit the abolition of an office; what is forbidden is the diminution of an incumbent's salary or emoluments during the term if the office continues to exist: Commonwealth, ex rel. Kelley, v. Clark et al., 327 Pa. 181, 188.

"The legislature may abolish or reorganize municipal or other agencies of government . . . and the reorganization may be such as to require an effective abolishment of offices . . . The incidental loss of an office occasioned thereby merely results from the valid exercise of this undeniable power. When such actions

of the legislature are not in opposition to the Constitution, there is no limitation on its power. Its acts may be unwise, unjust and violative of political, as well as other rights, of the citizens, but these considerations cannot justify the courts in holding the legislation unconstitutional": Suermann et al. v. Hadley, etc., 327 Pa. 190, 193.

In considering acts of the legislature which oust incumbents from office, courts cannot be placed in a position, nor should they have the appearance, of being super-legislative bodies that control legislation because it is unwise, or is not in accord with the ideas of the judges.

Our opinion in Commonwealth ex rel. v. Elliott, 40 D. & C. 665, is not pertinent here. The sheriff is a constitutional officer; furthermore the statute construed in that case did not undertake to abolish the office of sheriff.

The power of the legislature to deprive an officer of a portion of his term was considered in Commonwealth ex rel. v. Weir, 165 Pa. 284, where the Supreme Court said (p. 288) :

"As this decision will deprive the respondent of a portion of the term of his office, some question arises as to the power of the legislature to enact a law having such an effect. But this is fully met by the decision of this court in the case of Com. v. McCombs, 56 Pa. 436. We there held that as to offices which are legislative only and not constitutional, the power which created them may abolish or change them at pleasure without impinging upon any constitutional right of the possessor of the office, and without violating any duty of the legislative body."

In Commonwealth, ex rel. Graham, v. Collins et al., 316 Pa. 353, it was said (p. 356) :

"Although, by the general act, directors of the poor are declared to be county officers, it by no means follows that they become county officers under the con-

stitution. Offices which are legislative only and not constitutional may be abolished or changed by the power which created them."

III. But petitioners contend that county auditors are constitutional officers, not merely legislative officers.

The Constitution of Pennsylvania in section 1 of article XIV declares:

"County officers shall consist of sheriffs, coroners, prothonotaries, registers of wills, recorders of deeds, commissioners, treasurers, surveyors, auditors or controllers . . ."

The effect of designating an office by constitutional provision is to preclude abolition of the office by an act of the legislature. Presumably the framers of the Constitution deemed the enumerated offices indispensable to the satisfactory transaction of the public business. The constitutional provision was for the protection and benefit of the people, not for the benefit of the incumbent.

"The right to an office is not the right of the incumbent to the place, but of the people to the officer. An office therefore not constitutional exists by the will of the legislature only, and may be abolished any time, and the incumbent has no standing to complain": Lloyd, etc., v. Smith et al., 176 Pa. 213, 221.

It will be noted that the provision for auditors is in the alternative, "auditors or controllers". This designation led the Supreme Court to say that . . ."the county auditor is a constitutional officer only in the alternative, and that so far as the office is concerned it may be abolished at any time by the legislature, provided that the constitutional alternate, a county controller, is put in the place": Lloyd, etc., v. Smith et al., 176 Pa. 213, 221.

The court prefaced the foregoing quotation by stating that it was "The only tenable construction of section one of article fourteen" of the Constitution.

This is plain language which cannot be misunderstood, nor is the import thereof impaired by the subse-

quent statement in the same opinion that, "Whether an office which is only constitutional as an alternative with some other comes within this rule [that it may be abolished at any time] or not may be open to question, but we do not feel called upon to decide it now, as there is a fair construction of the Act of 1895 which makes it unnecessary."

In Lloyd, etc., v. Smith et al., supra, the court was construing the Act of June 27, 1895, P. L. 403, which provided for the election of a controller in counties having a population of 150,000. The act provided that at the election in November 1895, and triennially thereafter, the voters should elect "in place of county auditors" a controller. The act also prescribed that all the duties devolved on the county auditors and all the powers conferred on them by the earlier law should be performed and exercised by the county controller.

Apparently the term of office of the county auditors had not expired when the controller was elected and assumed the new office. The question before the court, in substance, was whether the office of county auditor had been abolished. The Act of 1895 did not in so many words expressly declare that the office was abolished.

The Supreme Court held that there was no incompatibility in the existence of both the offices of controller and county auditor (p. 222) :

"The constitution directs that one of them must exist in each county, but it does not say that both may not."

The opinion adds that there is nothing in the general intent of the act to prevent its being construed to permit the auditors to complete their term of office notwithstanding the election of a controller. The court says the legislature did not expressly provide for the continuance in office of the auditors, but "it has passed an act which can best be carried out by such a construction. In adopting it we are preserving the substance and *plain intent of the act*, without doing violence to any of its terms." (Italics supplied.)

Thus the court based the conclusion that the auditors might complete the term upon what the court regarded as the intention of the legislature. But the provision in The General County Law of 1929 leaves no uncertainty as to the intent of the legislature with respect to the continuance in office of the county auditors, for it declares in express terms that whenever the office of controller is established the county auditors shall file a report of their audit within three months after the controller assumes his office, "whereupon the said office of county auditor shall be abolished and cease to exist in said county."

It is not at all unlikely that this express declaration was made to avoid the interpretation placed upon the Act of 1895 by the court in Lloyd, etc., v. Smith et al.

We are asked by the answer filed by the county commissioners to declare the duties and responsibilities of the county commissioners and the controller with respect to completing the audit for the year 1940 and 1941 to February 17, 1941.

In the brief filed upon behalf of the county commissioners, "it is requested that the court declare the right of the county commissioners to retain the auditors for such periods of time as may be necessary to complete said audits (1940 and 1941 to February 17, 1941) and to pay them their statutory compensation."

We are without power to do as requested. The brief of the commissioners states:

". . . there is no responsibility attached to the office of controller with reference to the auditing of accounts prior to the assumption of his duties on February 17, 1941."

We do not subscribe to such a conclusion. We direct attention to the Act of June 27, 1895, P. L. 403, as amended by the Act of April 27, 1923, P. L. 111, 16 PS §1423, which requires the controller in the month of January in every year to make a report to the court of common pleas of all receipts and expenditures of the

county for the preceding year, in detail and classified as required by law, together with a full statement of the financial condition of the county.

We have no doubt that the controller who assumed office on February 17, 1941, is nevertheless required to file his report for the full calendar year of 1941.

Furthermore, the controller is obliged to furnish the commissioners, whenever required by them, a detailed account of any officer or other person having in his possession or under his control funds belonging to the county.

In Thayer et al. v. McCaslin, 314 Pa. 553, the Supreme Court said the controller is the county's head bookkeeper.

The law creating the office declares that the controller shall have a general supervision and control over the fiscal affairs of the county and of the accounts and official acts ". . . of all officers or other persons who shall collect, receive or distribute the public moneys of the county, or who shall be charged with the management or custody thereof, and he may, *at any time*, require from any of them, in writing, an account of all moneys, or property which may have come into their control, and he shall, immediately on the discovery of any default or delinquency . . . take immediate measures to secure the public moneys or property and remove the delinquent party . . .": Act of June 27, 1895, P. L. 403, sec. 4. (Italics supplied.)

The duty of the controller to include in his report the full year of 1941 seems too clear for argument.

But what with respect to the incomplete audit for 1940?

In counties where there is no controller the auditors are required to file an annual report with the court. If no exceptions are filed thereto the report is confirmed, and thereafter no matter contained therein can be contested collaterally. While the auditors' report is intended to inform the taxpayers and to procure an accu-

rate and honest accounting by public officials, it is fully as advantageous to officials whose accounts are audited, for confirmation of the report is assurance to them that, unless the court should revoke the confirmation, the accounts are settled satisfactorily for that period.

It is worthy of note that where auditors are displaced by a controller the final report of the former is to be filed with the controller (not presented to the court for confirmation). If the controller has no duties with respect to such report, one wonders what was the purpose of the requirement that it be filed with the controller.

The duties of the controller with respect to a report filed by the auditors are indicated by what is proper accounting practice rather than what is prescribed by law.

An auditor's report so filed, lacking as it does confirmation by the court, does not prevent the controller from reëxamining any accounts therein, for it is the confirmation by the court after an opportunity for exceptions that bars further inquiry into the accounts it has audited.

While the auditors' report is the formal assurance to the taxpayers of honest and accurate accounting by the public officials, it was by no means intended to be the only safeguard upon public funds. Each county officer is required by law to keep an accurate record of all receipts, and a monthly report thereof must be filed with the county commissioners, and the amount due paid to the treasurer. It is not to be supposed that the commissioners will not verify such records monthly as required by law, or that the treasurer will fail to insist upon such remittances. Similarly the county treasurer is obliged, once in three months, and oftener if required, to furnish the commissioners with a statement of all receipts and disbursements, together with the names of the collectors in whose hands any arrearages of taxes may remain, with the amount thereof, etc.

Numerous other acts impose upon county officials the duty of promptly accounting for public moneys. The official bond of the officer required to account, and the official bond of the officer required to inspect and verify such accounting, is some assurance of honest and accurate accounts.

We repeat that the duties of the controller with respect to the audit for 1940 are questions of practical accounting, rather than questions of law. It may be that good accounting practice will require the controller to begin his records with the latest auditors' report that has been confirmed. We do not hold that he is required by law to do so.

The taxpayers are not dependent solely upon the county auditors' report for assurance that the public business has been faithfully administered. Customarily, the auditors' report has not been filed until one year has elapsed beyond the expiration of the year which has been audited. It will not be supposed that the law contemplated that the county commissioners should await the filing of the report of the auditors to determine whether the various officials had made due accounting. As pointed out above, the law requires a monthly report by each officer. This report is to be audited by the commissioners. Thus the commissioners are informed from month to month of the affairs of the several offices. Actually the effect of the auditors' report as to the commissioners is only to confirm what the latter are presumed to have known long before the county auditors' report was filed.

If the controller has no duties with respect to the incomplete audit for 1940 (we are not to be understood as so ruling), we are unable to indicate specifically by what method the disbursements by the commissioners are to be confirmed. As to all the other offices and officers, the laws to which we have briefly referred, and others, vest ample legal authority in existing officers to procure an accurate and honest audit of the county

business for the year 1940, notwithstanding abolition of the office of county auditor.

## Judgment

And now, June 27, 1941, for the reasons set forth in the foregoing opinion, we conclude and declare:

1. The title of the Act of May 2, 1929, P. L. 1278, known as The General County Law, is not defective, and the act is not unconstitutional.

2. County auditor is a constitutional office only in the alternative, and it may be abolished at any time by the legislature, provided that the constitutional alternate, a county controller, is substituted.

3. The office of county auditor for Mercer County was abolished May 17, 1941.

4. It was the duty of the county auditors to file with the controller on or before May 17, 1941, a report of their audit.

5. The Act of May 2, 1929, P. L. 1278, which abolishes the office of county auditor before expiration of the term of the incumbents, does not offend the constitutional prohibition against diminution of the salary of a public officer during the term for which he was elected.

6. The duties of a county controller are not limited to transactions occurring after the date upon which he assumes office.

7. Before the office of controller was established, each county official was required to remit the receipts of his office to the county treasurer monthly.

8. It was the duty of the commissioners to inspect and examine monthly the receipts and remittances of each county official.

9. We are without power to authorize the county commissioners to continue the county auditors in office as such to complete the audit for the year 1940 and 1941 to February 17, 1941, as requested by the commissioners.

10. The duty of the controller with respect to audit of that portion of the year 1941 previous to February 17th is prescribed by law.

11. The duty of the controller with respect to the audit for 1940 is indicated by good accounting practice rather than by specific statutory prescription.

12. Ample legal authority is vested in existing officers to procure an accurate and honest audit of the county business for the year 1940, notwithstanding the abolition of the office of county auditor.