**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| RICHARD MARTIN, JR., RICHARD FIDLER AND TAMMI IAMS | : | No. 24 WAP 2023 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court entered April |
| v. | : | 13, 2023, at No. 369 CD 2022, |
| | : | Affirming in Part and Reversing In |
| | : | Part the Order of the Court of |
| DONEGAL TOWNSHIP, JAMES BAUER, | : | Common Pleas of Washington |
| RANDY POLAN, EDWARD SHINGLE, JR., | : | County entered March 29, 2022, at |
| KATHLEEN CROFT AND WASHINGTON | : | No. 2021-7906 and Remanding. |
| COUNTY BOARD OF ELECTIONS | : | |
| | : | ARGUED: April 10, 2024 |
| | : | |
| APPEAL OF: DONEGAL TOWNSHIP, | : | |
| JAMES BAUER, RANDY POLAN, | : | |
| EDWARD SHINGLE, JR. AND KATHLEEN | : | |
| CROFT | : | |

**OPINION**

**JUSTICE DOUGHERTY**                                      **DECIDED: OCTOBER 24, 2024**

We granted discretionary review to consider whether 53 P.S. §65402(e) (Section 402(e)) of the Second Class Township Code (Code)[1] was unconstitutionally applied in this case. As detailed below, we hold it was not, and accordingly reverse the order of the Commonwealth Court.

Under the Code, townships of the second class are "governed and supervised by boards of supervisors." 53 P.S. §65601. These boards "consist of three members or, if

---

[1] *See* 53 P.S. §§65101 – 68601.

approved by the" voters of the township, "five members." *Id.* "In townships in which the electorate has opted for a five-member board, the township shall return to a three-member board of supervisors upon petition of at least five percent of the [voters] of the township, or under a resolution of the board of supervisors, and upon approval by a majority of [voters] voting at the next municipal or general election." 53 P.S. §65402(d). "At the first municipal election following approval of the question providing for a return to a three-member board, three supervisors shall be elected to serve from the first Monday of January after the election, when the terms of the officers of the five-member board of supervisors shall cease." 53 P.S. §65402(e). In the election for the new three-member board, "[t]he three candidates receiving the highest number of votes for the office of supervisor shall be elected." *Id.* The candidate receiving the highest number of votes serves a six-year term, the next highest vote-getter serves four years, and the candidate receiving the third highest number of votes serves for a term of two years. *See id.*

In 2016, the voters of Donegal Township, a township of the second class in Washington County, voted to increase the number of members on the township's board of supervisors from three to five. In 2017, Tammy Iams was elected to the five-member board with a term expiring on January 3, 2022. In 2019, Richard Martin, Jr., was elected to the board with a term expiring on January 2, 2024, and Richard Fidler was elected to the board with a term expiring on January 5, 2026.[2]

On November 3, 2020, however, the voters of Donegal Township voted to reduce the number of board members from five back to three. On April 8, 2021, Supervisors filed in the Court of Common Pleas of Washington County an action for declaratory judgment and injunctive relief against the Washington County Board of Elections (Board of Elections), Donegal Township, Edward Shingle, Jr., and Kathleen Croft, challenging the

---

[2] We will refer to Martin, Fidler, and Iams collectively as "Supervisors."

constitutionality of Section 402(e) as applied to them. In addition, they filed a petition for a preliminary injunction to enjoin the upcoming primary election for the board of supervisors. The trial court denied a preliminary injunction, and the Commonwealth Court affirmed the denial. On May 18, 2021, James Bauer, Randy Polan, Shingle, Croft, and Iams won the primary election for the board of supervisors.

On May 20, 2021, Supervisors filed an amended action for declaratory judgment and injunctive relief against Donegal Township, Shingle, and Croft. The trial court dismissed the action, and Supervisors appealed. While their appeal was still pending, on November 2, 2021, the general election to select the three members of the reduced board was held. The three candidates receiving the highest number of votes, and thus the three candidates elected to serve on the board, were Bauer, Polan, and Shingle. On December 17, 2021, the Commonwealth Court vacated the trial court's order and remanded to the trial court to dismiss the Supervisors' amended action for lack of jurisdiction due to their failure to join indispensable parties (Bauer and Polan).

On December 29, 2021, Supervisors filed in the trial court another action for declaratory judgment and injunctive relief, which is the subject of this appeal. The action named as defendants Donegal Township, Bauer, Polan, Shingle, Croft, and the Board of Elections.[3] Supervisors alleged that pursuant to Section 402(e), which called for the terms of the officers of the five-member board to end on the first Monday of January after the election, *i.e.*, January 3, 2022, Martin would be removed from office approximately two years prior to the expiration of his term, and Fidler would be removed from office approximately four years prior to the expiration of his term. However, they insisted, township supervisors can be removed before the expiration of their terms only "on

_____

[3] We will refer to the defendants in this underlying action collectively as the "Donegal Parties."

conviction of misbehavior in office or of any infamous crime," or "by the Governor for reasonable cause" pursuant to Article VI, Section 7 of the Pennsylvania Constitution.[4] Accordingly, Supervisors claimed Section 402(e) is unconstitutional as applied to them. They requested the trial court declare Section 402(e) unconstitutional as applied, enjoin its enforcement, enjoin the removal of Martin and Fidler, and declare the November 2021 election invalid and void.

The Donegal Parties filed preliminary objections contending Supervisors did not follow the procedures for challenging elections required by the Election Code. In addition, they argued the action sounded in *quo warranto*, and Supervisors did not follow the procedures for bringing such an action. They also raised standing, mootness, and laches defenses. On the merits, the Donegal Parties argued Supervisors were not unconstitutionally removed from office but rather their offices were lawfully abolished.

On March 29, 2022, the trial court dismissed the action. The court ruled Iams, whose term expired January 3, 2022 in any event, lacked standing. In addition, the court held Section 402(e) does not violate Article VI, Section 7, and its procedures are

---

[4] Article VI, Section 7 provides:

> All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed. All civil officers elected by the people, except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.

PA. CONST. art. VI, §7.

"expressly authorized" by Article VI, Section 1, and Article IX, Section 3 of the Pennsylvania Constitution. Trial court op. at 20.[5] Supervisors appealed.

On April 13, 2023, the Commonwealth Court affirmed in part and reversed in part. *See Martin v. Donegal Twp.*, 293 A.3d 765 (Pa. Cmwlth. 2023). The panel affirmed the trial court's determination Iams lacked standing. However, the panel reversed the trial court's outright dismissal of the action. It reasoned "[A]rticle VI, [S]ection 7 of the Pennsylvania Constitution provides the exclusive method to remove elected officials from office." *Id.* at 778. "Accordingly," the panel held, "Section 402(e)['s] method of terminating [b]oard supervisor positions was unconstitutional as applied to Martin and Fidler." *Id.* The panel reinstated the action and remanded to the trial court with the direction that the Donegal Parties file an answer.

The Donegal Parties[6] filed a petition for allowance of appeal to this Court, which we granted limited to the first issue raised therein: "Whether Section 402(e) of the Second Class Township Code, 53 P.S. § 65402(e), is constitutional as applied when, pursuant to its terms, the number of township supervisors is reduced by referendum from five to three, thereby abolishing two supervisor seats?" *Martin v. Donegal Twp.*, 306 A.3d 259 (Pa. 2023) (*per curiam* order).

---

[5] Article VI, Section 1 provides: "All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law." PA. CONST. art. VI, §1. Article IX, Section 3 provides:

> Municipalities shall have the right and power to adopt optional forms of government as provided by law. The General Assembly shall provide optional forms of government for all municipalities. An optional form of government shall be presented to the electors by initiative, by the governing body of the municipality, or by the General Assembly. Adoption or repeal of an optional form of government shall be by referendum.

PA. CONST. art. IX, §3.

[6] The Board of Elections did not join in the petition.

The Donegal Parties argue Supervisors did not carry their heavy burden to demonstrate Section 402(e) was unconstitutionally applied here. They contend the office of supervisor of a second class township is a legislative rather than constitutional office. As such, they assert the offices held by Martin and Fidler could be lawfully abolished regardless of whether there was time remaining on their terms. They claim this case does not involve the attempted removal of sitting officials from offices that would continue to exist. The Donegal Parties insist there is a distinction between abolishing a legislative office and removing a specific elected official for purported improprieties. In addition, they maintain it is not necessary for this Court to consider whether reducing the number of supervisors from five to three changed Donegal Township's form of government. In their view, a change in the form of government is not a prerequisite to the lawful abolition of a legislative office. In any event, they assert the reduction in the number of supervisors did in fact change the township's form of government because it reduced the number of supervisors required for a quorum and to pass an item of business, and because it required the approval of the voters via referendum.

In response, Supervisors contend they were unconstitutionally removed from office under Section 402(e). Relying on *In re Petition to Recall Reese*, 665 A.2d 1162 (Pa. 1995), and *South Newton Tp. Electors v. South Newton Tp. Sup'r, Bouch*, 838 A.2d 643 (Pa. 2003), they argue Article VI, Section 7 generally provides the exclusive method for removing elected officials from office before the expiration of their terms. They allege two narrow exceptions to this general rule: laws predating the Pennsylvania Constitution of 1874,[7] and a change in the form of government. Neither of these exceptions, Supervisors

---

[7] The 1874 Constitution included Article VI, Section 4, the predecessor to Article VI, Section 7, which provided:

> All officers shall hold their offices on the condition that they behave themselves while in office, and shall be removed on conviction of

(continued…)

claim, is implicated here. They argue Section 402(e) was enacted in 1933. Moreover, they insist the implementation of Section 402(e) did not change the township's form of government. They emphasize reducing the number of board members did not change the system of electing supervisors, abolish the position of supervisor, or alter the powers, duties, or authority of the supervisors. Similarly, while Supervisors acknowledge it is permissible for a municipality to abolish a municipal office and abolition is beyond the scope of Article VI, Section 7, they maintain that is not what happened here. On the contrary, they contend the office of supervisor in Donegal Township will remain the same, with the sole difference being the number of supervisors who comprise the board.

Preliminarily, as counsel for Supervisors appeared to concede at oral argument, only one of the three Supervisors (Fidler) currently has a potential claim to relief. *See* Oral Argument at 4:26:13-15, *Martin v. Donegal Twp.*, J-29-2024 (April 10, 2024), https://www.youtube.com/watch?v=LICMf4YU7MI&t=15992s ("So the one person who remains is Mr. Fidler."). First, Iams lacks standing. In order to pursue a legal action in the courts of this Commonwealth, "an individual must as a threshold matter show that he has standing to bring the action." *Pittsburgh Palisades Park, LLC v. Com.*, 888 A.2d 655, 659 (Pa. 2005). An individual has standing if he "has demonstrated aggrievement, by establishing 'a substantial, direct and immediate interest in the outcome of the litigation.'" *Robinson Tp., Washington County v. Com.*, 83 A.3d 901, 917 (Pa. 2013), *quoting Fumo*

---

misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly, and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.

PA. CONST. art. VI, §4 (1874).

*v. City of Phila.*, 972 A.2d 487, 496 (Pa. 2009). "[A] 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law[.]" *Pa. Med. Soc'y v. Dep't of Pub. Welfare of Com.*, 39 A.3d 267, 278 (Pa. 2012). "[A] 'direct' interest requires a showing that the matter complained of caused harm to the party's interest[.]" *Id.* An interest is "immediate" if that "causal connection" is not remote or speculative. *Id.* Iams's term as a member of the township's board of supervisors naturally expired on January 3, 2022, "the first Monday of January after the election" for the new three-member board. 53 P.S. §65402(e). Thus, unlike Martin and Fidler, her time in office was not truncated by the implementation of the Section 402(e) reduction. Rather, she served the entirety of the term to which she was elected in 2017. Under these circumstances, Iams was not aggrieved by the application of Section 402(e), and lacks standing to join in the as-applied constitutional challenge to this provision.

Moreover, while Martin, in contrast to Iams, had standing at the outset of the litigation, his individual claim to relief is now moot. Pennsylvania courts "generally will not decide moot" claims. *Pap's A.M. v. City of Erie*, 812 A.2d 591, 599 (Pa. 2002). A claim is moot if "the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect." *Burke ex rel. Burke v. Independence Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014). The underlying action is a claim for declaratory and injunctive relief. Yet, the term Martin was elected to serve in 2019 expired on January 2nd of this year. Under these circumstances, it is not possible to issue a meaningful order practically affecting Martin. Declaring Section 402(e) unconstitutional would not affect Martin now that he is no longer a board member subject to this provision. Moreover, injunctive relief securing him the remainder of his term cannot be ordered because his term has already ended. At this point, Martin's claim is moot. *See Meyer v. Strouse*, 221 A.2d 191, 192

(Pa. 1966) (dismissing as moot *quo warranto* action challenging tax collector's ouster from office where "the term of office involved had already expired").

Turning to the constitutionality of Section 402(e) as applied to Fidler, "[c]onsideration of the constitutionality of a statute presents a question of law; accordingly, our standard of review is *de novo*, and our scope of review is plenary." *Keystone RX v. Bureau of Workers' Compensation Fee Review Hearing Office*, 265 A.3d 322, 329 n.4 (Pa. 2021). An as-applied constitutional challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Commonwealth v. McCabe*, 265 A.3d 1279, 1290 (Pa. 2021), *quoting United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). There is a "strong presumption in the law" that statutes are constitutional. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Com.*, 877 A.2d 383, 393 (Pa. 2005). A party challenging the constitutionality of a statute "bears a very heavy burden of persuasion." *McLinko v. Department of State*, 279 A.3d 539, 565 (Pa. 2022). A statute may not be deemed unconstitutional "unless it clearly, palpably, and plainly violates the Constitution." *Keystone*, 265 A.3d at 331. "If there is any doubt that a challenger has failed to reach this high burden, then that doubt must be resolved in favor of finding the statute constitutional." *Id.*, *quoting Pennsylvania State Ass'n of Jury Com'rs v. Com.*, 64 A.3d 611, 618 (Pa. 2013).

"[T]he general principles governing the construction of statutes apply also to the interpretation of Constitutions." *Perry Cnty. Tel. and Tel. Co. v. Pub. Serv. Comm'n*, 108 A. 659, 660 (Pa. 1919). As with statutes, "words and phrases" in our state Constitution "shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. §1903(a). "The common and approved meaning of a word

or phrase is appropriately gleaned from dictionary definitions." *Commonwealth v. Chisebwe*, 310 A.3d 262, 269 (Pa. 2024).

Again, Article VI, Section 7 of our Constitution provides:

> All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be **removed** on conviction of misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record, may be **removed** at the pleasure of the power by which they shall have been appointed. All civil officers elected by the people, except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be **removed** by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.

PA. CONST. art. VI, §7 (emphases added). Article VI, Section 7, by its express terms, applies only when a civil officer is "removed" from office. "Removed" in this context is the past tense of the verb "remove," which is pertinently defined as "to dismiss from office[.]" https://www.merriam-webster.com/dictionary/remove.

Importantly, while Article VI, Section 7 provides the "exclusive method" for **removing** elected civil officers, this constitutional provision is not implicated in circumstances not involving removal. *South Newton*, 838 A.2d at 644, *Reese*, 665 A.2d at 1167. For instance, and relevant here, Article VI, Section 7 does not encroach on the legislature's power under Article VI, Section 1 to modify a legislative (*i.e.*, non-constitutional) office.[8] *See Visor v. Waters*, 182 A. 241, 245 (Pa. 1936) ("It is thoroughly settled now beyond question that the Legislature has power to abolish or change offices which are legislative only, and not constitutional, without infringing upon any constitutional right of the possessor of the office and without violating any duty of the legislative body.");

---

[8] The office of township supervisor is a legislative office. *See In re Supervisors of Milford Tp., Somerset County*, 139 A. 623, 624 (Pa. 1927), *overruled on other grounds*, *Reese*, 665 A.2d at 1167.

*Commonwealth ex rel. Elkin v. Moir*, 49 A. 351, 355 (Pa. 1901) ("[A]s to offices which are legislative only, and not constitutional, the power which created them may abolish or change them at pleasure, without impinging upon any constitutional right of the possessor of the office, and without violating any duty of the legislative body."); *Commonwealth ex rel. Braughler v. Weir*, 30 A. 835, 836 (Pa. 1895) (same); *Commonwealth v. McCombs*, 56 Pa. 436, 439 (1867) ("Not having been mentioned by the Constitution, the legislature was left with unrestricted power to prescribe what the duties of the office should be, what the length of its tenure, what its emoluments, and how it should be filled. Having the power to create, they have also the power to regulate, and even destroy."); *see also Arneson v. Wolf*, 124 A.3d 1225, 1227 (Pa. 2015) ("[O]ur case law establishes that [Article VI, Section 7] is read together with Article VI, Section 1[.]"). Article VI, Section 7 "was never intended to put offices created by the legislature beyond the control and regulation of the creating power[, or] to ordain that an office for a term of years, once made, should not be modified or abolished, while the term remained unexpired." *McCombs*, 56 Pa. at 441; *accord Com. ex rel. Tarner v. Bitner*, 144 A. 733, 734 (Pa. 1929); *Weir*, 30 A. at 836.

Section 402(e) provides:

> At the first municipal election following approval of the question providing for a return to a three-member board, three supervisors shall be elected to serve from the first Monday of January after the election, when the terms of the officers of the five-member board of supervisors shall cease. The three candidates receiving the highest number of votes for the office of supervisor shall be elected. The candidate receiving the highest number of votes shall serve for a term of six years. The candidate receiving the second highest number of votes shall serve for a term of four years. The candidate receiving the third highest number of votes shall serve for a term of two years. After that, supervisors shall be elected under section 403 [53 P.S. §65403].

53 P.S. §65402(e).  The application of Section 402(e) to Fidler did not result in his being "removed" under Article VI, Section 7.  He was not dismissed from the board of supervisors, leaving his term unexpired and a vacancy on the board.  Rather, after the reduction of the number of supervisors as authorized by the Code, application of Section 402(e) shortened his existing term and provided him an opportunity to win a new term of office.  Indeed, had Fidler received the highest number of votes in the election for the new three-member board, he would have received a new six-year term beginning on January 3, 2022, and ending on January 3, 2028.  That is, his new term of office would have been two years **longer** than his existing term, which was set to expire on January 5, 2026.  As it happens, however, Fidler lost in the primary election to serve on the new three-member board.[9]  But his lack of success at the ballot box does not mean application of Section 402(e) in this context violates Article VI, Section 7.  On the contrary, application of this provision to Fidler is a lawful exercise of the legislature's constitutional authority under Article VI, Section 1 to modify a legislative office it has itself created.

Supervisors' reliance on *Reese* and *South Newton*, where this Court held very different laws violated Article VI, Section 7, is misplaced.  *Reese* involved the recall provision of the Kingston Home Rule Charter, which provided:

> Petition demanding the recall of any elective municipal officer shall be signed by qualified electors equal in number to at least forty-five percent (45%) of the number of total votes cast for the office of mayor in the most recent election for mayor in the municipality.  No signature contained in a petition on recall shall be valid unless affixed to the petition within ninety (90) days prior to the filing of the petition.  If the majority of the votes cast on the question are in favor of recall, the office shall become vacant

---

[9] *See* Summary Results Report, 2021 Municipal Primary, Washington County, at 23, 344, available                                                                                              at https://cms.washingtoncopa.gov/uploads/2021_Primary_Official_Results_Election_Summary_3868b5c430.pdf.

immediately upon certification of the results by the County Board of Elections. Any vacancy created by recall shall be filled in accordance with Articles II and III of this Charter.

*Reese,* 665 A.2d at 1164. *South Newton* concerned Section 503 of the Code, which provided:

> If any township officer fails to perform the duties of the office, the court of common pleas upon complaint in writing by five percent of the electors of the township may issue a rule upon the officer to show cause why the office should not be declared vacant. The officer shall respond to the rule within thirty days from its date of issue. Upon hearing, the court may declare the office vacant and require the vacancy to be filled under section 407 [53 P.S. §65407].

*South Newton,* 838 A.2d at 644-45*, quoting* 53 P.S. §65503 (held unconstitutional). The laws at issue in *Reese* and *South Newton* explicitly provided for removal of elected civil officers. They purported to authorize the dismissal of individuals from office and creation of immediate vacancies. Accordingly, these removal provisions squarely contravened Article I, Section 7, which, again, "is exclusive and invalidates statutory pronouncements governing the removal of elected civil officers." *South Newton*, 838 A.2d at 645. Here, on the other hand, Section 402(e) does not authorize the removal of Fidler from office, or anyone else for that matter. Instead, its application modified Fidler's existing term of office and presented him with the opportunity to win a new term on a three-member board.

Supervisors' other arguments also miss the mark. The fact Section 402(e) was enacted in 1933, and therefore postdates the Pennsylvania Constitution of 1874, is irrelevant. A statute providing for the removal of an elected civil officer in violation of Article VI, Section 7 is nonetheless constitutionally permissible if it antedates the 1874 Constitution. *See South Newton*, 838 A.2d at 648 ("[L]egislation directing a particular form of process that pre-existed the 1874 Constitution remains effective."). However, where, as here, the statute does not provide for removal in the first place, and hence does not infringe upon the exclusive domain of Article VI, Section 7, the time of its passage is

of no legally relevant moment. Similarly inconsequential are Supervisors' contentions that Section 402(e) did not change the form of government of Donegal Township or abolish the office of township supervisor. Irrespective of whether Section 402(e) did either of these things, it does not authorize the removal of anyone from office. As such, application of this statute to Supervisors did not run afoul of Article VI, Section 7. Under its plain language, Article VI, Section 7 supersedes overlapping legislative pronouncements as to removal only.

For the foregoing reasons, the order of the Commonwealth Court is reversed.

Chief Justice Todd and Justices Donohue, Wecht, Mundy, Brobson and McCaffery join the opinion.

Justice McCaffery files a concurring opinion.