# Georges Township School Directors.

*Constitutional law — Removal of school directors — Act of May 18, 1911, P. L. 309—Not retroactive—Article VI, section 4, Constitution—Removal of public officers.*

1. Section 217 of the Act of May 18, 1911, P. L. 309, providing for the removal of school directors by the court of common pleas, is constitutional, and does not violate article VI, section 4, of the Constitution, providing methods for removing appointed and elected public officers.

2. At the time the Constitution of 1874 went into effect, the school system of Pennsylvania was in force and recognized, and the new provisions of the Constitution apply merely as restrictions for the future.

3. The method of removing school directors provided by the Act of May 8, 1854, P. L. 617, in the quarter sessions, changed by the Act of May 18, 1911, P. L. 309, to the common pleas, is not invalid by reason of article VI, section 4, of the Constitution of 1874.

4. Subsequent constitutions have never been construed as abolishing old systems and establishing new, but rather in the light of amendments of existing laws.

5. A new Constitution is not to be construed as an abrogation of existing laws, unless the intent is too clear to be mistaken, but, like amendments to the statute law, is deemed to be operative only for the future.

Argued March 15, 1926.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 10, March T., 1926, by S. J. Warman et al., respondents, from order of C. P. Fayette Co., Dec. T., 1924, No. 529, removing school directors, In re Petition of Sundry Resident Taxpayers for the Removal of School Directors of Georges Twp. School District. Affirmed.

Petition under section 217 of the Act of May 18, 1911, P. L. 309, to remove school directors.

The opinion of the Supreme Court states the facts.

Order entered in accordance with prayer of petition. Respondents appealed.

*Error assigned* was, inter alia, order, quoting record.

*H. S. Dumbauld,* with him *Brownfield & McDaniel,* for appellants.—Section 217 of the Act of May 18, 1911, P. L. 309, is unconstitutional: Com. v. Hoyt, 254 Pa. 45; People v. Howland, 29 N. E. 775; Com. v. Benn, 284 Pa. 421; Bowman's Case, 225 Pa. 364; Houseman v. Com., 100 Pa. 222; Com. v. Likely, 267 Pa. 310; Ross's App., 179 Pa. 24.

*A. E. Jones,* with him *Dean D. Sturgis, H. L. Robinson* and *J. W. Dawson,* for appellees.—Section 217 of the Act of 1911, is constitutional: Com. v. Weir, 165 Pa. 284; Lloyd v. Smith, 176 Pa. 213; Com. v. Black, 201 Pa. 433; Bloomsburg School Directors' App., 121 Pa. 293; Kittanning Twp. School Directors, 179 Pa. 60; Murray's Petition, 262 Pa. 188; Com. v. Tice, 282 Pa. 595; Seltzer v. Fertig, 237 Pa. 514; Com. v. Likely, 267 Pa. 310; Arthur v. Phila., 273 Pa. 419; Com. v. Reid, 265 Pa. 328; Felton v. Com., 8 W. & S. 267; Com. v. Gibbons, 196 Pa. 97; Com. v. McCombs, 56 Pa. 436; Com. v. Moir, 199 Pa. 534.

OPINION BY MR. JUSTICE SADLER, April 12, 1926:

The third class School District of Georges Township, Fayette County, is managed by a duly elected board of directors. On October 21, 1924, thirty-one taxpayers presented a petition to the court of common pleas, asking for the removal of the entire body because of neglect and refusal to perform the duties imposed upon them by law, the application being based on section 217 of the School Code: Act May 18, 1911 article II. It was averred that money had been unlawfully borrowed, supplies purchased without advertisement, as required by law, a failure to properly keep the district's records,

provide an annual budget, to comply with the legal requirements as to the issuance of orders for payment of money, and the appointing in turn of members of the board as paid officers at excessive and unlawful compensation. The testimony taken before the court below shows the forbidden acts to have begun as early as 1914, continuing until the time of the institution of this proceeding. Though the evidence has not been printed, the opinion of the court clearly discloses such gross wrongdoing as to justify the removal of the entire board. By the order finally entered, two members were permitted to continue in service, because of their recent assumption of official duties, relieving them, in the opinion of the trial judge, from responsibility for the misfeasances clearly shown as to the others. From the decree entered, an appeal has been taken, raising, in the two assignments of error filed, but one question, viz, Whether the Act of 1911, as to section 217, is unconstitutional, and the proceedings, therefore, void.

It will be noticed first that early provision was made for the removal of school directors for failure to perform duties legally imposed (Act April 12, 1838, section 11; Act March 7, 1840, sections 33 and 36), and the directors themselves were permitted, in certain cases, to declare the seats of elected members vacant: Felton v. Com., 8 W. & S. 267. A similar provision covering the case where the board failed to organize is found in the Act of April 22, 1863, P. L. 523, and, later, by application to the court of common pleas, where suitable accommodations had not been provided, or the health and morals of the school children not protected: Acts of June 6, 1893, P. L. 330, and June 6, 1893, P. L. 339. A general codification of the school laws was made by the Act of May 8, 1854, P. L. 617. Section 8 provided that seats of elected members, who fail to attend regular meetings, could be declared vacant by the other directors, and, section 9, that all may be removed by the court of quarter sessions upon petition of six taxable

citizens of the district who furnish proof that the board
has been derelict in keeping the schools in operation, in
so far as the means of the district will permit, or where
it shall appear that they "neglect or refuse to perform
any other duty enjoined by law." The School Code of
1911, already referred to, has practically the same regu-
lation, but making the court of common pleas the
tribunal to pass upon the question, and requiring,
further, that the petition be signed by ten taxpayers.
The effectiveness of this legislation is now challenged
on the ground that the Constitution of the State, passed
in 1873, worked such change as to make impossible the
application of the former removal statutes, as well as to
prevent the enforcement of those passed thereafter,
which were in conflict with the provisions found therein
directing the manner of deposing public officers.

Article VI, section 4, directs that "All officers shall
hold their offices on the condition that they behave them-
selves well while in office, and shall be removed on con-
viction of misbehavior in office or of any infamous crime.
Appointed officers, other than judges of courts of record
and the superintendent of public instruction, may be
removed at the pleasure of the power by which they shall
have been appointed. All officers elected by the people,
except governor, lieutenant governor, members of the
general assembly, and judges of courts of record learned
in the law, shall be removed by the governor for reason-
able cause, after due notice and full hearing, on the ad-
dress of two-thirds of the senate."

It is insisted that, since school directors are elective
officers, they cannot be removed, unless convicted of
some misbehavior or crime, and except in the manner
provided in the recited section. If this be true, then the
procedure set forth in the constitutional article referred
to must be followed, notwithstanding the delay which
would follow such formal proceeding, though the "crime,
imbecility or gross neglect of duty may demand that an
officer shall be removed at once": Lane v. Com., 103 Pa.

481, 486. Situations doubtless arise where a failure to promptly make a change would be dangerous and injurious to the interests of the school district, but that, of course, could afford no justification for sustaining the act if it cannot legally be made to apply. The constitutional method of removal must be resorted to, where applicable, for it is "exclusive and prohibitory of any other mode which the legislature may deem better or more convenient": Com. v. Benn, 284 Pa. 421, 428.

Again, it is to be noted that, in so far as appointive officers are concerned, there is the right, under the provision cited, on the part of the one selecting to remove at his own pleasure (contrary to the rule theretofore in force, Field v. Com., 32 Pa. 478; Brower v. Kantner, 190 Pa. 182), and this applies not only to officers designated by the governor, but to those permitted by the legislature to make the appointment in question, whether the employment be by the State, a county or municipality (Seltzer v. Fertig, 237 Pa. 514; Houseman v. Com., 100 Pa. 222; Com. v. Hoyt, 254 Pa. 45; Com. v. Connor, 207 Pa. 263), though the requirements of article VI, section 4, have never been applied to what are known as petty officers, such as policemen, and the like: Com. v. Black, 201 Pa. 433; Richie v. Phila., 225 Pa. 511, 515. And, where the assembly, for its own convenience in carrying on its own work, has established an administrative department, with the right of the governor to nominate, subject to its approval, but reserving to itself the right to remove, the executive cannot, at his own pleasure, force the withdrawal of one selected: Com. v. Benn, 284 Pa. 421.

It embraces all public officers who are elected by the people and exercise some function of the government (Com. v. Reid, 265 Pa. 328), including those who serve on behalf of a municipality: Houseman v. Com., supra. In determining who are public officers within the meaning of the provision in question, a distinction has frequently been drawn between individuals which the Con-

stitution expressly provides shall be chosen, and others provided for by acts of assembly, passed either before or after, and sometimes called legislative officers. Such persons, exercising public functions, are still to be classified as public officials (Richie v. Phila., 37 Pa. Superior Ct. 190, affirmed in 225 Pa. 511) though distinguished, in certain regards, from those expressly named by the Constitution. In the former case, the legislature may change its mind and entirely abolish the office created and occupied (Com. v. Weir, 165 Pa. 284; Lloyd v. Smith, 176 Pa. 213; Com. v. Moir, 199 Pa. 534), and may increase the duties of the officer without providing additional compensation: Com. v. Tice, 282 Pa. 595. But where no provision has been made by the legislature for the manner of removal of such an officer (Com. v. Reid, supra), then he must be deposed, if at all, in the way provided by the fundamental law. If, however, the position has been specially provided for by the Constitution itself, article VI, section 4, must control, if an attempt to dismiss from service is undertaken: Bowman's Case, 225 Pa. 364; Reid v. Smoulter, 128 Pa. 324. To the extent indicated, there is the difference between the so-called constitutional and legislative officer, but we are not convinced, as was the learned court below, with the argument that elected school directors are creatures merely of statute, and, therefore, do not come within the constitutional provision as to removal, the act of assembly having provided a method for severing their connection from office for wrongdoing.

Nevertheless on a different ground we reach the same conclusion. Prior to the Constitution, the Act of 1854, above referred to, and later legislation, regulated the manner and causes of removal in the case of school directors. They were not named specifically as officers in the Constitution of 1873, nor in the earlier ones, though we find in each of them provisions for the establishment of schools. The former directs that: "The general assembly shall provide for the maintenance and support

of a thorough and efficient system of public schools, wherein all the children of the Commonwealth, above the age of six years, may be educated": article VII, section 1. The system already in force was recognized, and it does not follow that new provisions, in the nature of limitations upon the power of the legislature, destroy previous legislation inconsistent with them, for the new regulations apply merely as a restriction for the future: White on the Constitution, page 23. "In judging what [the Constitution] means, we are to keep in mind that it is not the beginning of law for the State, but that it assumes the existence of a well understood system which is still to remain in force and be administered, but under such limitations and restrictions as that instrument imposes": Cooley on Constitutional Limitations, 7th ed., 94. "Subsequent constitutions have never been construed as abolishing old systems and establishing new, but rather in the light of amendments of existing law. This being so, the Constitution is not to be construed as an abrogation of existing laws, unless the intent is too clear to be mistaken, but, like amendments to the statute law, is deemed to be operative only for the future": White on the Constitution, 21.

In passing upon the present case, it must be remembered that school directors were elected public officers, recognized as agents of the State, when the Constitution was adopted. In the absence of the existence of a system, necessarily in the mind of its framers, it would be held that they came within the express terms of article VI, section 4, and that any act subsequently passed, providing a conflicting method of removal, was legally prohibited. But we must remember that the earlier legislation furnished a different manner of procedure in such cases, and it, or modifying acts of assembly passed since 1873, will still be effective, unless the attempt is made to depart from the provisions as then existing. It may be noted that this court has frequently affirmed orders of the court of quarter sessions or common pleas remov-

ing school directors, as provided by various acts of assembly, though in none of the cases referred to was the question of constitutionality raised: Bloomsburg School Directors' App., 121 Pa. 293; Kittanning School Directors, 179 Pa. 60; Barr's Case, 188 Pa. 122; Ross's App., 179 Pa. 24; Summit Hill School Directors, 258 Pa. 575; Murray's Petition, 262 Pa. 188. The Act of 1911 provides for removal for like causes named in the Act of 1854, the only difference being in the conferring of jurisdiction to hear upon the common pleas, instead of the quarter sessions, a change not prohibited by the Constitution in any of its sections, and, therefore, unobjectionable.

The school district was recognized by the Constitution, in express terms, as an agent of the Commonwealth: Ford v. School Dist., 121 Pa. 543. Prior to 1873, the conduct of the school was regulated, directors, with certain obligations, were elected, and the powers of removal by the courts granted in case of default. If the dismissal of the board, in the present case, under the Code of 1911, would have been permissible under the Act of 1854, neglect to perform legal duties appearing, there can be no constitutional objection to the exercise of a similar authority as then authorized: Butler Twp. School District's Case, 158 Pa. 159. The same principle has been recognized in applying the Act of 1901, relating to mechanics' liens (Act June 4, P. L. 431), as to which an apparent change in the law was made by the Constitution of 1873. In passing upon the effect of this, the court said: "The result of the decisions above noted, is to make it clear that any provision of the Act of 1901, which is clearly divergent from, and is an advance upon the law as it stood prior to the Constitution of 1874, is to be regarded as invalid"; otherwise, this is not so: Page v. Carr, 232 Pa. 371, 377; Crane Co. v. Rogers (No. 1), 60 Pa. Superior Ct. 305; Taylor Lumber Co. v. Carnegie Institute, 225 Pa. 486. If some new authority is attempted to be granted, then the legislation comes within

the constitutional inhibition, even if it be a part, though an extension, of a system theretofore existing: Sax v. School Dist., 237 Pa. 68. The grounds for removal, under the Act of 1854, were, amongst other causes, to be based on proof of negligence, or refusal to perform a duty enjoined by law. The finding of the court below would have authorized a dismissal of the board, had the proceeding been based on section 9 of that legislation. If the court had power to remove prior to 1873, on evidence such as here submitted, then its jurisdiction must be sustained, notwithstanding the provisions of article VI, section 4, of the new Constitution. For the reason stated, section 217, of the Act of 1911, being in effect only an amendment of section 9 of the Act of 1854, supra, must be held to be a constitutional exercise of legislative power. The petition for dismissal of the board was, therefore, properly entertained, and the findings of fact fully justify the legal conclusion reached.

The order and decree of the court below is affirmed at the cost of appellants.