665 A.2d 1162

**In re PETITION TO RECALL the Honorable Gary R. REESE from the Office of Mayor of the Municipality of Kingston.**

Supreme Court of Pennsylvania.

Argued April 27, 1995.

Decided Oct. 17, 1995.

Gaele McLaughlin Barthold, Philadelphia, Lewis W. Wetzel, Wilkes Barre, for Intervenors.

Brad Kurlancheek, Wilkes Barre, for Gary R. Reese.

Richard M. Goldberg, Wilkes Barre, County Solicitor, for the Luzerne County Board of Elections.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

ZAPPALA, Justice.

The question we address is whether the recall provisions of the Kingston Home Rule Charter are constitutional. For the reasons set forth below, we find that these provisions violate Article VI, § 7 of the Pennsylvania Constitution. We therefore affirm the order of the Court of Common Pleas of Luzerne County.

Kingston, a municipality of approximately 15,000 citizens, is a home rule municipality, which form of government became effective in January, 1976. On November 2, 1993, Appellee, the Honorable Gary R. Reese, was elected to the office of mayor.

On March 6, 1995, Appellants, Kingston Citizens for Change, filed a Petition for Recall of Appellee with the

Luzerne County Board of Elections, seeking to recall Appellee on the May 16, 1995 primary ballot. The petition was filed in accordance with the recall provisions of the Kingston Home Rule Charter.

On March 14, 1995, Appellee filed objections in common pleas court seeking to set aside the recall petition. Three days later, the court granted Appellants' request to intervene. The court also ruled that the Petition for Recall was facially defective and allowed Appellants until March 20, 1995, to amend the petition. In addition, the court granted Appellee until March 22, 1995, to file amendments to his original objections and additional objections. A corrected Petition for Recall was filed and Appellee timely filed an amended objection challenging the recall on constitutional as well as other grounds.

By Opinion and Order dated March 29, 1995, the court of common pleas denied Appellant's Motion to Quash Appellee's Amended Objections, sustained Appellee's Amended Objections to Appellants' Petition for Recall, set aside Appellants' Petition for Recall, and directed the Luzerne County Board of Elections not to place the question of recall on the May 16 primary ballot. The court held that the recall provisions of the Kingston Home Rule Charter are unconstitutional and void based upon *Citizens Committee to Recall Rizzo v. Board of Elections,* 470 Pa. 1, 367 A.2d 232 (1976).

Appellants then filed an appeal with this Court on April 4, 1995. On April 5, this Court entered an order noting probable jurisdiction pursuant to 42 Pa.C.S. § 722(7), and granted Appellants' petition for expedited review. Following oral argument, we entered an order on April 27, 1995, affirming the order of the court of common pleas and indicating that an opinion would follow.

Appellants contend that the recall provisions of the Kingston Home Rule Charter are constitutional because Article IX, § 2 of the Pennsylvania Constitution permits a home rule charter municipality to exercise any power or perform any function not denied by the Constitution or the General Assem-

bly. Appellants argue that since the power of recall is not denied by the Constitution or the General Assembly, the recall provisions of the Kingston Home Rule Charter are constitutional. Appellants also claim that the trial court erred in concluding that the recall provisions were unconstitutional based upon *Rizzo* because that case is neither precedential nor instructive.

Article VI of the Pennsylvania Constitution provides:

## PUBLIC OFFICERS

### Selection of Officers Not Otherwise Provided for in Constitution

Section 1. All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law.

. . . .

### Removal of Civil Officers

Section 7. All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed civil officers, other than judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed. All civil officers elected by the people,. except the Governor, the Lieutenant Governor, members of the General Assembly and judges of the courts of record, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.

Article IX, § 2 of the Constitution is as follows:

### Home Rule

Section 2. Municipalities shall have the right and power to frame and adopt home rule charters. Adoption, amendment or repeal of a home rule charter shall be by referendum. The General Assembly shall provide the procedure by which a home rule charter may be framed and its adoption, amendment or repeal presented to the electors.

If the General Assembly does not so provide, a home rule charter or a procedure for framing and presenting a home rule charter may be presented to the electors by initiative or by the governing body of the municipality. A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

The recall provisions of the Kingston Home Rule Charter, which were adopted pursuant to Article IX, § 2, and the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, No. 62, §§ 101–1309, 53 P.S. 1–101 et seq., state:

Section 704. Recall.

Petition demanding the recall of any elective municipal officer shall be signed by qualified electors equal in number to at least forty-five percent (45%) of the number of total votes cast for the office of mayor in the most recent election for mayor in the municipality. No signature contained in a petition on recall shall be valid unless affixed to the petition within ninety (90) days prior to the filing of the petition. If the majority of the votes cast on the question are in favor of recall, the office shall become vacant immediately upon certification of the results by the County Board of Elections. Any vacancy created by recall shall be filled in accordance with Articles II and III of this Charter.

Section 705. General Procedures, Forms, and Sufficiency.

Initiative, referendum, and recall shall be governed by the procedures and rules for form and sufficiency of petitions set forth in this Article as well as other procedures and rules regarding form and sufficiency of petitions as the Council may impose by ordinance consistent with the provisions, spirit, and purpose of this Article. All petitions shall be filed with the County Board of Elections, which shall be the judge of their sufficiency. Any duly proposed ordinance, or any question of approving or rejecting an ordinance or any question on recall, shall be submitted to the voters of the municipality at the next primary, municipal, or

general election held at least sixty (60) days after the petitions are filed at the County Board of Elections.

■ Our analysis must begin with two factors weighing in favor of the Appellants' position. First, all legislative enactments are presumed to be constitutional, see *Addison's Case*, 385 Pa. 48, 122 A.2d 272 (1956), and this presumption can be rebutted only if the legislation clearly, palpably, and plainly violates the Constitution. *Local 22, Philadelphia Fire Fighters' Union, International Association of Fire Fighters, AFL-CIO, by Yost v. Commonwealth*, 531 Pa. 334, 613 A.2d 522 (1992). The party arguing the unconstitutionality of a legislative enactment has a heavy burden to sustain such a claim. *Masloff v. Port Authority of Allegheny County*, 531 Pa. 416, 613 A.2d 1186 (1992).

■ Second, pursuant to the constitutional and statutory provisions authorizing home rule, a home rule municipality's exercise of power is presumed to be valid absent a specific constitutional or statutory limitation, and ambiguities are to be resolved in favor of the municipality. See 53 P.S. § 1–301; *County of Delaware v. Township of Middletown*, 511 Pa. 66, 511 A.2d 811 (1986).

The common pleas court, relying on the lead opinion in *Rizzo*, held that notwithstanding these presumptions in favor of the charter provisions, the recall method of removal specified therein was contrary to Article VI, Section 7. In light of this ruling we consider it appropriate to review the *Rizzo* case.

The Citizens Committee to Recall Rizzo (Recall Committee) submitted to the Board of Elections a petition to recall Mayor Frank Rizzo pursuant to the recall provisions of the Philadelphia Home Rule Charter. As provided by the Charter, the Board of Elections commenced an examination of the petition to determine its validity for filing. Subsequently, the Board filed a declaratory judgment action with the common pleas court seeking an extension of the fifteen-day requirement for examination of the petition. The common pleas court granted the initial extension and additional requests for extension of time.

The Board of Elections ultimately ruled that the petition was invalid and rejected it. The Recall Committee initiated an action in mandamus against the Board seeking to require the Board to file the recall petition and to order a recall election. Mayor Rizzo filed a petition to intervene, which was granted. The trial court resolved the mandamus action in favor of the Recall Committee.

The lead opinion of Chief Justice Jones identified three issues in Mayor Rizzo's appeal to this Court: (1) the propriety of the trial court's entertaining the mandamus action and granting the writ requested; (2) the sufficiency of the petition and the correctness of the Board's rejection of various signatures; and (3) the constitutionality of the recall provisions. 470 Pa. at 5, 367 A.2d at 233–234. He, along with Justice (now Chief Justice) Nix in a separate opinion joined by Justice Manderino, concluded that the Board of Elections did not exceed its discretionary powers regarding the invalidation of the signatures and that the trial court erred in granting the writ of mandamus. These justices also determined that the Board properly rejected certain signatures, resulting in an insufficient number of signatures to meet the requirements of the charter.

Among the three dissenting members of the Court, Justices Pomeroy and Roberts would have affirmed the decision of the common pleas court with respect to the validity of the petition, while Justice Eagen would have remanded, finding that neither side had been given an adequate hearing to litigate the validity of the petition.

Plainly then, there was not a majority of the Court voting to decide the case on the narrow legal ground regarding the appropriateness of mandamus or on the narrow factual ground regarding the validity of certain petitions and signatures. A majority did rule that the recall provision of the Philadelphia Home Rule Charter violated the Pennsylvania Constitution, although no single statement of the rationale for this conclusion garnered a majority of votes.

Chief Justice Jones, in the lead opinion, accepted the reasoning of several prior cases that the grant of power to the legislature in Article VI, Section I to "direct[ ] by law" how "officers, whose selection is not provided for in this Constitution, shall be elected or appointed," necessarily implied a power to establish methods for removal as well. He went on to conclude that with regard to elected officers, these methods for removal were limited "by the specific requirement of Article VI, Section 7, that all such officers be removed only for *cause.*" 470 Pa. at 27, 367 A.2d at 245 (emphasis in original).

The difficulty with this reasoning is that it lifts the "reasonable cause" and "due notice and full hearing" phrases entirely out of the context of the sentence in which they are written. "All civil officers elected by the people ... *shall be removed by the Governor* for reasonable cause, after due notice and full hearing, *on the address of two-thirds of the Senate.*" (Emphasis added.) The Opinion of Chief Justice Jones offered no explanation of why the cause, notice, and hearing provisions of Article VI, Section 7, should be treated as "a broad requirement, expressly applicable to all civil officers, whether they be created by the Constitution or the legislature," *Id.,* but the role of the Governor and the Senate should not be given the same effect.

Three justices—Justice O'Brien writing for himself, and Justice Nix joined by Justice Manderino—rejected the premise accepted by Chief Justice Jones that the Article VI, Section 1 power to create elected offices implied a power to establish methods for removal as well. These justices focused on the principal case establishing this holding, *Milford Township Supervisors' Removal,* 291 Pa. 46, 139 A. 623 (1927), and both opinions suggested that it was wrongly decided. According to their reasoning, Article VI, Section 7 provided the exclusive method for removal of elected civil officers, to wit, removal by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate.

*Milford Township* involved a petition to the court of quarter sessions to have certain township supervisors' offices declared

vacant due to alleged dereliction of duty by the office holders. The petition was filed pursuant to section 192 of the General Township Act of July 14, 1917. The lower court dismissed the petition, holding that the statute conflicted with Article VI, Section 4 of the Constitution [now Section 7].

Our Court reversed. We construed the statute as creating the office of township supervisor with a "conditional" six year term of office. The condition was that the supervisor not refuse or neglect to perform his duties, for if he did so proceedings could be brought in the court of quarter sessions to declare the office vacant and have a replacement appointed. The authority to make the term of office "a conditional one, which should end when a breach of duty was adjudged in the way specified," 291 Pa. at 50, 139 A. at 624, was found to be implied in constitutional provision [then Article XII, Section 1, now Article VI, Section 1] that officers not provided for in the constitution shall be elected or appointed as may be directed by law.

On the specific issue of the application of the constitutional provision dealing with removal, the Court made reference to cases where the question had been discussed but not ruled on. Then, without analysis, the Court declared the holding that although that section "is not limited to what are frequently termed constitutional officers, it is not applicable where the legislature, having the right to fix the length of a term of office, has made it determinable by judicial proceedings, on other contingencies than the mere passage of time." *Id.* at 52, 139 A. at 625.

Examination of one of the cases referred to, *Georges Township School Directors,* 286 Pa. 129, 133 A. 223 (1926), provides a telling indication of the lack of depth in the reasoning in *Milford.* In *Georges Township,* the issue was whether a statute authorizing removal of elected school directors by court proceedings was constitutional. The common pleas court had granted the petition and removed board members. On appeal, this Court seemingly accepted the board members' argument that such proceedings were contrary to the language of Article VI, Section 4 [now Section 7], writing

we are not convinced, as was the learned court below, with the argument that elected school directors are creatures merely of statute, and, therefore, do not come within the constitutional provision as to removal, the act of assembly having provided a method for severing their connection from office for wrongdoing.

286 Pa. at 134, 133 A. at 225. Nevertheless we went on to reach the same result on a different ground, deciding that such proceedings were permissible because that method of removal had predated the constitutional provision, which was added in 1873. The new provision was not to be interpreted as abrogating existing laws, but merely as a restriction for the future.[1] The opinion clearly indicated

it must be remembered that school directors were elected public officers ... when the Constitution was adopted. *In the absence of the existence of a system, necessarily in the minds of the framers, it would be held that they came within the express terms of article VI, section 4, and that any act subsequently passed, providing a conflicting method of removal, was legally prohibited.* But we must remember that the earlier legislation furnished a different manner of procedure in such cases, and it, or modifying acts of assembly passed since 1873, will still be effective, *unless the attempt is made to depart from the provisions as then existing.*

*Id.* at 135, 133 A. at 225 (emphasis added).

Despite this clear expression of support in *Georges Township* for the view that elected public officers whose offices were created by legislation enacted after 1873 could only be removed as specified in the Constitution, the Court in *Milford,* holding to the contrary, blatantly misrepresented that in *Georges Township* "a leaning was there shown towards our present conclusion." 291 Pa. at 52, 139 A. at 625.

---

1. In *Milford,* the Court elaborated on the basis for this approach, citing Section 2 of the schedule to the Constitution of 1873 to the effect that "statutes ... which were in force when it was adopted, continued in effect thereafter, and ... they might be amended constitutionally, although an entirely new statute, dealing with the same subject matter, was forbidden." 291 Pa. at 49, 139 A. at 624.

■ Having reexamined the foundations of *Milford*, we conclude, as suggested by the concurring opinions in *Rizzo*, particularly the opinion of Justice (now Chief Justice) Nix, that that case was wrongly decided, and it is hereby overruled. Harkening back to the analysis in *Georges Township*, we hold that Article VI, Section 7 "indisputably applies to *all elected* officers, and sets forth in unambiguous language the exclusive method, absent impeachment, conviction of crime or misbehavior in office, of removing such elected officers." *Rizzo*, 470 Pa. at 38, 367 A.2d at 250–51 (Concurring Opinion of Nix, J.) (emphasis in original).

■ Having thus interpreted Article VI, Section 7, we must conclude that in providing for recall the municipality of Kingston exceeded the powers conferred by Article IX, Section 2 and the Home Rule Charter and Optional Plans Law. This method of removal is specifically denied by the Constitution.

The Order of the Court of Common Pleas of Luzerne County is affirmed.

MONTEMURO, J., is sitting by designation.