# Reading Society of Model Engineers v. Berks County Board of Assessment Appeals

C.P. of Berks County, no. 98-8039.

*George A. Spohrer,* for appellant.
*Edwin L. Stock,* for appellee.

ESHELMAN, *S.J.,* December 15, 1999—Reading Society of Model Engineers, appellant, made application to Berks County Board of Assessment Appeals, appellee, for exemption from payment of real estate taxes for the 1999 tax year on the basis of being an institution of purely public charity. Appellee denied appellant's request for exemption and appellant filed an appeal. Appellant contends that exemption should be granted pursuant to the provisions of the "Institutions of Purely Public Charity Act" of November 26, 1997, 10 P.S. §371 et seq., Act 55. Appellee contends that the provisions of Act 55 violate the Constitution of Pennsylvania, and in the alternative, that appellant fails to meets the requirements of Act no. 55 for exemption as an institution of purely public charity.

## FINDINGS OF FACT

(1) Appellant owns a tract of land (premises) of 25.22 acres in the Township of Alsace, Oley Valley School District, Berks County, consisting of two parcels, including a .15 acre tract assessed at $600 (pin no. 22-5329-02-56-0300), and a 25.07 acre tract assessed at $169,700 fair market value and $93,000 clean/green pursuant to the Pennsylvania Farmland and Forest Land Assessment Act of 1974, 72 P.S. §5490.2 et seq. (Pin no. 22-5329-01-45-5327.)

(2) The improvements located on appellant's premises consist of, inter alia, a 40 feet by 80 feet two-story building (clubhouse) which includes an explorer boy scout post room for "HO" gauge scale train layout, a combined meeting room and library, museum, kitchen, and machine shop, and a "O" gauge scale train layout modeled after the Reading Railroad; also located on appellant's premises is a sheet metal building, station, two watchman shanties, screened picnic pavilion with kitchen, and a 15-inch gauge railroad track 4,000 feet in length with nine switches, passing tracks, roundhouse and turntable; the operable equipment used on the 15-inch gauge railroad track includes a diesel locomotive with seven cars and caboose modeled after the Reading Railroad, as well as other locomotives and railroad cars and equipment, some of which were constructed by appellant's members and are depicted among picture exhibits 5A through L.

(3) Appellant was chartered as a nonprofit corporation by Berks County Court of Common Pleas on October 11, 1999, having been organized by a group of 10

Reading residents interested in preserving the history and tradition of the Reading Railroad, which played a vital role in the community for many years.

(4) Appellant's membership consists of 83 persons classified as 28 active, 10 associate, 9 student, 11 contributing, and 25 participating, and of the total membership, 44 members reside in Berks County; some of the active members started as student members, became associate and finally active members.

(5) Appellant's premises are accessible at any time to appellant's members, each of whom has a key for access to the premises.

(6) Appellant's members maintain and use the premises, construct, maintain and use the improvements, and construct, maintain, use and operate the equipment, all as described in findings nos. 1 and 2; appellant's members use and maintain the machine shop located in the clubhouse for constructing and maintaining improvements and equipment and for instructing appellant's members on proper usage of the machine shop, including instruction on maintenance and operation of steam engines and boiler construction and maintenance.

(7) Appellant sponsors and supervises a local boy scout explorer post which meets in the clubhouse, and under instruction by appellant's members the scouts work on construction of the "HO" gauge train layout which also includes panels for an operating layout, stations, buildings and scenery; three of appellant's members serve as leaders of the scouts, and appellant pays the membership fees for the scouts.

(8) The contents of the museum and library located in the clubhouse include, inter alia, memorabilia of Reading Railroad, exhibits demonstrating steam engine op-

erations, plate glass negatives showing engines, slides showing locomotives, cars and stations of the Reading Railroad, 400 pen and ink original drawings of Reading Railroad locomotives and special cars, trade magazines, manuals for car builders, encyclopedias, rosters of locomotives, and artifacts including headlamps; visitors are allowed access to the museum and library without charge and certain of said museum and library contents may be borrowed without charge by non-members of appellant interested in engineering or historical research, or copies of certain items are provided by appellant to interested persons at cost of reproduction.

(9) Appellant is exempt from federal income tax under section 501(a) of the Internal Revenue Code as an organization described in section 501(c)(3) of the code.

(10) Articles of amendment of appellant, a nonprofit corporation, dated August 9, 1997 provide, inter alia, that no part of the net earnings of the corporation shall inure to the benefit of its members or other private parties, and that upon dissolution the corporation assets shall be distributed for one or more exempt purposes within the meaning of section 501(c)(3) of the Internal Revenue Code, or to federal, state or local government for a public purpose.

(11) The annual dues are $125 for appellant's active members, $100 for associate members, and $25 for student members; other sources of income are donations and gifts.

(12) Appellant had total receipts of $14,000 in 1998, $12,000 in 1997 and slightly over $17,000 in 1996; in 1999 appellant's receipts have exceeded expenditures by

approximately $1,000, in 1998 receipts exceeded expenditures by $263, and in 1997 expenditures exceeded receipts by $947.

(13) No payments are made for services rendered by appellant's members and any excess of receipts over expenditures is used for conducting appellant's above described activities.

(14) Appellant's premises are open to the public on the first Sunday of each month starting after Memorial Day to the first Sunday in September, and on two open house days held each year, during all of which times indoor and outdoor equipment is operated by appellant's members for benefit of members of the public, including rides on the 15-inch gauge railroad; separate organized groups of members of the public such as a playground association, bible study groups, blind association members, the Historical Society of Berks County, are admitted to the premises occasionally by special arrangement for use of the facilities including the picnic pavilion and for rides on the 15-inch gauge railroad; prior to any train rides groups of visitors, including any children, are instructed as to safety precautions, and are also given general safety instructions pertaining to railroad crossings and staying off of railroad property.

(15) During the Christmas season starting Thanksgiving until New Year's day appellant provides a "HO" gauge scale train layout for display at Gring's Mill public park which is open to the public.

(16) Visits to appellant's premises by members of the public on those days when open to the public, or to organized groups of persons by special arrangement, are without charge but voluntary contributions are invited by appellant.

(17) Appellant has a written policy that it does not charge for its services, the particular wording of such policy not having been disclosed by the evidence presented.

(18) Appellant advertises in the press and through Berks County tourist promotion agency that its facilities are open to the public, "admission by donation" or "admission free," the frequency, nature, extent and content of such advertising not having been disclosed by the evidence presented.

## DISCUSSION

### Constitutionality of Act No. 55

Article VIII, Section 2(a) of the Constitution of the Commonwealth of Pennsylvania provides in part as follows: "The General Assembly may by law exempt from taxation: . . . (v) Institutions of purely public charity. . . ."

The General County Assessment Law, 72 P.S. §5020-204(a)(3) provides that the following property shall be exempt from all county, city, borough, town, township, road, poor and school tax:

"All hospitals, universities, colleges, seminaries, academies, associations, and institutions of learning, benevolence, or charity including fire and rescue stations, with the grounds thereto annexed and necessary for occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided, that the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose: . . . ."

Until the enactment of the Institutions of Purely Public Charity Act on November 26, 1997, the judiciary had the sole role of interpreting this tax exemption provision of the General County Assessment Law pertaining to "public or private charity."

In *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 22, 487 A.2d 1306, 1317 (1985), the Supreme Court of Pennsylvania established the following five requirements for qualification as a purely public charity: (1) advances a charitable purpose; (2) donates or renders gratuitously a substantial portion of its services; (3) benefits a substantial and indefinite class of persons who are legitimate subjects of charity; (4) relieves the government of some of its burden; and (5) operates entirely free from private profit motive.

Following the HUP decision of 1985 the Supreme Court and other Pennsylvania courts have been following this case and applying the standards set forth therein. However, effective November 26, 1997 the General Assembly enacted Act 55, which tracks the language of the HUP standards but sets forth specific criteria for an institution to qualify as a purely public or private charity entitled to exemption from taxation pursuant to General County Assessment Law. The legislative intent of Act 55 is stated in 10 P.S. §372(b) as follows:

"It is the intent of the General Assembly to eliminate inconsistent application or eligibility standards for charitable tax exemptions, reduce confusion and confrontation among traditionally tax-exempt institutions and political subdivisions and ensure that charitable and public funds are not unnecessarily diverted from the public good to litigate eligibility for tax-exempt status by providing

standards to be applied uniformly in all proceedings throughout this Commonwealth for determining eligibility for exemption from state and local taxation which are consistent with traditional legislative and judicial applications of the constitutional term "institutions of purely public charity."

Appellee contends that by enactment of Act 55 the legislature usurped the judiciary's role of interpreting Article VIII, Section 2(a)(v) of the constitution authorizing the general assembly to exempt from taxation institutions of purely public charity. On the contrary, Article VIII, Section 2(a)(v) authorizes the legislature to enact laws exempting from taxation those institutions of purely public charity which the legislature desires to exempt, including legislative standards that must be met to qualify for such exemption. However, it is the responsibility of the courts to determine the scope of Article VIII, Section 2(a)(v) and whether particular legislation can be accommodated as coming within the confines of this constitutional provision. See *Community Option Inc. v. Board of Property Assessment, Appeals and Review,* (Allegheny Cty., nos. GD97-7953, GD97-27, AD 98-499 (1999)).

When legislative enactments are challenged the courts give the legislature the benefit of the doubt. This approach is stated in *In re Petition to Recall Reese,* 542 Pa. 114, 119, 665 A.2d 1162, 1164 (1995) as follows:

"[A]ll legislative enactments are presumed to be constitutional, . . . and this presumption can be rebutted only if the legislation clearly, palpably, and plainly violates the constitution. The party arguing the unconstitutional-

ity of a legislative enactment has a heavy burden to sustain such a claim." (citations omitted)

Prior to the enactment of Act 55, in the absence of specific legislative standards, the courts determined the scope of the provision of the General County Assessment Law authorizing the granting of exemptions from taxation of certain charitable institutions and determined the requirements for qualifying for such exemption. *HUP, supra.* If legislative standards had existed the courts would have addressed the constitutionality of such standards rather than unilaterally developing their own constitutional analysis. However, now that Act 55 has been enacted the question is not whether such legislation is consistent with judicial criteria created in the absence of legislation, but whether the legislation setting forth standards for exemption for an institution of purely public charity "clearly, palpably, and plainly violates the constitution."

Appellee's only contention challenging the constitutionality of Act 55 is that the legislature by establishing standards for tax exemption in Act 55 thereby usurped the judiciary's role in interpreting Article VIII, Section 2(a)(v) of the constitution. Appellee does not challenge the constitutionality of any specific provisions of Act 55. Appellee's contention is therefore denied.

*Compliance with Act 55 Standards*
*for Tax Exemption*

Section 5 of Act 55, 10 P.S. §375, specifies the criteria for institutions of purely public charity in subsections (b), (c), (d), (e) and (f), and provides in subsection (a) that "An institution which meets the criteria speci-

fied . . . shall be considered to be founded, endowed and maintained by public or private charity."

## Charitable Purpose

Subsection (b) entitled "charitable purpose" provides that this standard is satisfied if the institution is organized and operated primarily to fulfill any one or combination of six enumerated purposes. Appellant contends that among the enumerated standards, appellant qualifies under "(2) advancement and provision of education. . . ." and "(6) Accomplishment of a purpose which is recognized as important and beneficial to the public and which advances social . . . objectives."

Appellant was organized for preservation of the history and tradition of the Reading Railroad, which played a vital role in the Reading community and Pennsylvania for many years. Appellant's members maintain appellant's premises and construct, maintain and operate the improvements and equipment on the site, and also make particular use of the machine shop for such construction and maintenance and for instruction of appellant's members, with particular emphasis on boilers and steam engines.

Appellant's members also maintain and utilize the museum and library located on the premises, which facilities contain, inter alia, memorabilia of the Reading Railroad, exhibits, slides, drawings, magazines, manuals for car builders, encyclopedias, rosters of locomotives, all pertaining to the history of railroading, and which museum and library, including copies of the various documents, are also available to and are used not only by appellant's members but also non-members in-

terested in engineering and research as well as members of the general public.

Appellant's gradation of membership includes student and associate members who are able to progress to the higher classification of active membership. Appellant sponsors supervise and instruct the members of an explorer boy scout troop which is devoted to construction, maintenance and operation of an "HO" gauge train layout including panels, stations, buildings and scenery. During visits to the premises of appellant by members of the general public and by organized groups for rides on the 15-inch gauge railroad, visitors learn of the history of the railroad, view the various types of locomotives and railroad cars, and are instructed on safety measures pertaining to railroad crossings and property. Appellant also provides a "HO" gauge scale layout for display during the Christmas season at Gring's Mill public park. Appellant is the only institution in Berks County offering such a broad educational program on railroading, which fulfills the charitable purpose of subsection (b)(2), that of "advancement and provision of education."

The above mentioned participation by members of the general public, plus the visits by organized groups to the premises and usage not only of the train rides but also the picnic pavilion and kitchen, as well as visits to the museum and library, fulfill another aspect of charitable purpose as set forth in subsection (b)(6), that of "accomplishment of a purpose which is recognized as important and which advances social . . . objectives."

## Private Profit Motive

Subsection (c) entitled "private profit motive" provides that "[t]he institution must operate entirely free from private profit motive." Appellant meets all the four requirements of this subsection in that none of the monies received inure to the benefit of any members or other individuals as interpreted under section 501(c)(3) of the Internal Revenue Code, appellant applies all revenues in excess of expenses to its charitable purpose, none of appellant's members are compensated for services rendered, and appellant's articles of incorporation prohibit the use of any surplus fund for private inurement to any person in event of dissolution. Appellee concedes that appellant complies with this subsection (c) standard.

## Community Service

Subsection (d)(1) entitled "community service" provides that "[t]he institution must denote or render gratuitously a substantial portion of its services," and that this criteria is satisfied if the institution benefits the community by actually providing any one of seven enumerated types of goods and services.

Appellant contends that it provides the following:

"(i) Goods or services to all who seek them without regard to their ability to pay for what they receive if all of the following apply:

"(A) The institution has a written policy to this effect.

"(B) The institution has published this policy in a reasonable manner.

"(C) The institution provides uncompensated goods or services at least equal to 75 percent of the institution's

net operating income but not less than 3 percent of the institution's total operating expenses."

Although appellant's witness testified that appellant has a written policy that appellant does not charge for services (N.T. p. 36), neither a copy of such written policy, nor the contents thereof, were produced. Also, appellant's witness testified that in appellant's advertising it states that the policy is not to charge (N.T. p. 36), and that appellant advertises in the press and through Berks County tourist promotion agency that its facilities are open to the public, "admission by donation" or "admission free" (N.T. p. 32). However, the detailed content of such advertising, copies thereof, the frequency thereof, and the particular press medium utilized and the extent thereof, were not disclosed. Consequently, the evidence presented does not meet the requirements of subsections (A) and (B) that appellant has a written policy, the actual contents not having been disclosed, and that whatever written policy has been published in a "reasonable manner."

As concerns subsection (C) requiring that the institution provide uncompensated goods and services at least equal to 75 percent of net operating income but not less than 3 percent of total operating expenses, no details of income and expenses were disclosed by the evidence other than annual surplus or deficit, but since all revenues are devoted to appellant's maintenance and operations, this requirement is seemingly satisfied.

Inasmuch as the evidence is deficient as concerns subsection (A) and (B), appellant has failed to satisfy the requirements of the standard pertaining to community service.

## Charity to Persons

Subsection (e)(1) entitled "charity to persons" provides that "[t]he institution must benefit a substantial and indefinite class of persons who are legitimate subjects of charity." Subsection (e)(2) defines "legitimate subjects of charity" as "[t]hose individuals who are unable to provide for themselves with what the institution provides for them," and defines "substantial and indefinite class of persons" as "[p]ersons not predetermined in number, provided that, where the goods or services are received primarily by members of the institution, membership cannot be predetermined in number and cannot be arbitrarily denied by a vote of the existing members."

Appellant contends that members of the general public, the explorer scouts, playground association, bible study and blind association groups are not in a position to provide for themselves the services, education and entertainment provided by appellant, and that research historians and engineers have no other source where they have access to Reading Railroad exhibits and memorabilia.

Although appellant requires no particular payment for visitors to access its premises and services, it does invite "admission by donation" or "admission free," and thus appellant does serve at least some members of the general public, including children, with services at no charge. Further, visits to appellant's premises are not confined to privileged individuals but are open to the indefinite public insofar as identity of persons is concerned.

However, although a particular number of persons who benefit from whatever extent of services is not controlling but the totality of circumstances must be taken into

consideration, the evidence in this case does not establish that a "substantial" class of persons benefit and who are legitimate subjects of charity. Appellant's premises are open to the general public only six days out of the year including the first Sunday of each month following Memorial Day to the first Sunday of September plus two days of open house, and are open occasionally to organized groups by special arrangement. Consequently, the persons who benefit primarily from the use of appellant's premises, improvements and operations are, for the most part, appellant's dues-paying members who have a key for access to the premises at any time.

Appellee's primary function is therefore in the nature of a club for members interested in railroading rather than a charitable undertaking. Although making appellant's premises, improvements and operations available to the general public on a very limited basis is commendable, appellant is not an institution that benefits a substantial and indefinite class of persons who are legitimate objects of charity as required by subsection (e)(1).

## Government Service

Subsection (f)(1) entitled "government service" provides that "[t]he institution must relieve the government of some of its burden." This criterion is satisfied if the institution meets any one of five categories. Appellant contends it meets category (4) in that it "[p]rovides a service to the public which directly or indirectly reduces dependence on government programs or relieves or lessens the burden borne by government for the advancement of social, moral, educational or physical objectives."

As previously discussed in detail under the heading "charitable purpose," appellant is the only institution in Berks County offering education, a library and museum, opportunity for research, and technical training concerning railroading, as well as recreational opportunities including rides on a 15-inch gauge railroad. The history of the contribution of the railroads to the economic development of the United States, and particularly the contribution of the Reading Railroad to the economic development of Pennsylvania including Berks County, is of vital importance as part of the education of both appellant members as well as the general public. The services provided by appellant therefore lessens the burden borne by government for the advancement of educational and social objectives as required by category (4).

## CONCLUSIONS OF LAW

(1) Act 55 of November 26, 1997, known as Institutions of Purely Public Charity, 10 P.S. §372 et seq., is not in violation of Article VIII, Section 2, of the Constitution of Pennsylvania for the mere reason that Act 55 provides criteria or standards for an institution to be considered founded, endowed and maintained by public or private charity for purpose of exemption from local real estate taxation under provisions of the General County Assessment Law, 72 P.S. §5020-204(3).

(2) Appellant meets the criteria for institutions of purely public charity as required by Act 55 section 375(b) entitled charitable purposes, section 375(c) entitled private profit motive, and section 375(f) entitled government service, 10 P.S. §375(b), (c) and (f).

(3) Appellant fails to meet the criteria for institutions of purely public charity as required by Act 55 section

375(d) entitled community service, and section 375(e) entitled charity to persons, 10 P.S. §375(d) and (e).

(4) Appellant fails to meet all of the five criteria for an institution of purely public charity as required by Act 55 section 375(a), 10 P.S. §375(a), and therefore cannot be considered to be founded, endowed and maintained by public or private charity.

(5) Appellant and its property consisting of 25.22 acres, does not qualify for exemption from local taxation under the General County Assessment Law, 72 P.S. §5020-204(a)(3), as an institution of charity founded, endowed and maintained by public or private charity.

## ORDER

December 15, 1999, it is ordered that the appeal of Reading Society of Model Engineers, appellant, from the decision of the Board of Assessment Appeals denying exemption from taxation of appellant's property consisting of 25.22 acres, is hereby denied, whereby said property shall remain subject to local real estate taxation.