JUSTICE BAER, Concurring and Dissenting
I agree with the general legal conclusion underlying the Majority's decision: Subsection 2962(f) of the Home Rule Charter and Optional Plans Law precludes home-rule municipalities, like the City of Pittsburgh ("City"), from regulating businesses and employers, "except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities[.]" 53 Pa.C.S. § 2962(f).[1] I also agree with the Majority *841 that Subsection 2962(f) bars the City's Safe and Secure Buildings Act ("SSBA") because the SSBA regulates businesses and employers by imposing "a complex and burdensome set of continuing obligations upon owners and employees of 'covered properties,' " Majority Opinion at 832, and the City has failed to identify a statute of this Commonwealth that expressly provides a home-rule municipality with the authority to pass such an ordinance. Consequently, I join the following parts of the Majority Opinion: I., II., III., and IV.C.
I, however, respectfully dissent from the remainder of the Majority Opinion, particularly its conclusion that Subsection 2962(f) does not invalidate the City's Paid Sick Days Act ("PSDA"). As noted, Subsection 2962(f) prohibits the City from placing "duties, responsibilities or requirements" upon "businesses, occupations and employers." It seems beyond serious controversy that the PSDA regulates businesses and employers by requiring them to provide sick leave to their employees. Indeed, the Majority appears to agree. See Majority Opinion at 818 (explaining that the PSDA requires employers in the City to provide sick leave to employees). Thus, Subsection 2962(f) precludes the City from placing this requirement upon businesses and employers, unless the City can identify express statutory language that permits it to legislate in this manner.
The City has failed to highlight any express statutory authority allowing it to mandate that businesses and employers provide employees with sick leave, and I find the Majority's contrary conclusion to be unpersuasive. As to this latter statement, in finding that the Disease Prevention and Control Law of 1955 ("DPCL"), 35 P.S. §§ 521.1 - 521.21, contains sufficient authority to allow the City to pass the PSDA, the Majority first finds "that the DPCL is ambiguous with regard to whether and when municipalities may enact ordinances related to disease prevention and control." Majority Opinion at 827. Next, the Majority utilizes principles of statutory construction to conclude that, because the City is within "the jurisdiction of the Allegheny County Health Department, [it] qualifies as a municipality which has a department of health for purposes of [the] DPCL[.]" Id. at 828. Lastly, the Majority apparently concludes that, because the general object of the DPCL is disease prevention and control, it necessarily follows that the DPCL expressly provides home-rule municipalities with the authority to require businesses and employers to provide sick days to their employees. Id. at 828-33.
In my view, the need for a circuitous, 11-page construction of the DPCL demonstrates the contrary result, i.e. , the DPCL does not contain express statutory language allowing the City to mandate that businesses and employers provide their employees with sick days. I further note that, because the Majority finds that the DPCL provides the City with sufficient authority to pass the PSDA, it understandably declines to address whether the other statutory authority cited by the City can substantiate the validity of the PSDA. However, to determine if I am in concurrence with or dissent from the Majority's ultimate conclusion, it is necessary for me to consider the only other statutory sections upon which the City relies to assert express authority for the PSDA. These *842 sections can be found in the Second Class Cities Code ("SCCC"), 53 P.S. §§ 22101 - 28707.
According to the City, Section 22145 of the SCCC grants it the power to "make regulations to secure the general health of the inhabitants, and to remove and prevent nuisances." City's Brief at 17 (quoting 53 P.S. § 23145 ). The City further states that: (1) Section 23146 of SCCC permits it to "make all necessary orders and regulations to prevent the introduction of contagious or pestilential diseases into the city; to enact quarantine laws for that purpose, and to enforce the same within five miles of the city limits[,]" id. (quoting 53 P.S. § 23146 ); and (2) Section 23158 grants the City with authority to "make all such ordinances, by-laws, rules and regulations, not inconsistent with the Constitution and laws of this Commonwealth, as may be expedient or necessary ... for the ... maintenance of the peace, good government and welfare of the city, and its trade, commerce and manufacturers[,]" id. (quoting 53 P.S. § 23158 ). In sum, the City suggests that these statutory provisions expressly provide it with authority to enact the PSDA.
To the extent that the City can rely on provisions of the SCCC for purposes of validating its authority to pass the PSDA, I believe these statutes suffer from short-comings similar to those of the DPCL. While the above-stated provisions of the SCCC may imply that second class cities have some authority to regulate businesses and employers in a manner to protect the general welfare of their citizens, the statutes simply do not provide express statutory authority allowing home-rule municipalities to mandate that businesses and employers provide sick leave to their employees.
For these reasons, I conclude that the Commonwealth Court correctly determined that Subsection 2962(f) invalidates both the SSBA and the PSDA. In closing, I note my agreement with the expressions of the Chief Justice in his cogent Concurring and Dissenting Opinion, which I join in full. Accordingly, I would affirm the Commonwealth Court's order, which affirmed that trial court's order granting Appellees' motion for judgment on the pleadings.
Chief Justice Saylor and Justice Mundy join this opinion.
JUSTICE DOUGHERTY, Concurring and Dissenting
I agree with and fully support the Majority's discussion of the historical and legal background of the Home Rule Charter and Optional Plans Law (the Home Rule Law), as well as the Majority's legal analysis and interpretation regarding the powers and limitations granted to home rule municipalities. I further support the Majority's evaluation of the Business Exclusion limitation placed on home rule municipalities at 53 Pa.C.S. § 2962(f). More specifically, I agree with the Majority's determination that the City of Pittsburgh (City) did not exceed its authority in enacting the Paid Sick Days Act (PSDA) because the PSDA has a "direct nexus with public health," and falls, in part, "within ... the City's traditional police powers" authorizing it to overcome the Business Exclusion. Majority Op. at 832. However, I cannot agree with the Majority's disparate treatment of the City's Safe and Secure Buildings Act (SSBA). I would find, under the analysis performed by the Majority in interpreting the PSDA, the SSBA similarly has the requisite statutory authority to overcome the Business Exclusion. Accordingly, I join parts I, II, III, IV.A and IV.B, but must respectfully dissent from parts IV.C and V of the Majority Opinion.
*843 As a threshold matter, I note we must exercise great care in discerning limits on the power of home rule municipalities to enact ordinances. The General Assembly specifically granted home rule municipalities expansive authority by providing:
A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter. All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.
53 Pa.C.S. § 2961. Additionally, "pursuant to the constitutional and statutory provisions authorizing home rule, a home rule municipality's exercise of power is presumed to be valid absent a specific constitutional or statutory limitation, and ambiguities are to be resolved in favor of the municipality." In re Petition to Recall Reese , 542 Pa. 114, 665 A.2d 1162, 1164 (1995) ; see also Devlin v. City of Philadelphia , 580 Pa. 564, 862 A.2d 1234, 1242 (2004), citing PA. CONST. art. IX, § 2. We must also acknowledge the decision to become a home rule municipality is accomplished "by the affirmative vote of the electors of the City" and "[w]here [a home rule charter] is adopted by a constitutionally empowered electorate, it affords an example of pure democracy - the sovereign people legislating directly and not by representatives in respect of the organization and administration of their local government." In re Addison, 385 Pa. 48, 122 A.2d 272, 275-76 (1956).
Keeping the above principles in mind, this Court's responsibility in interpreting ordinances passed by a home rule municipality is to protect the ability of an electorate - that constitutionally chose to be governed under the Home Rule Law - to govern itself by liberally construing home rule municipal powers in favor of the municipality. Accordingly, I agree with the Majority that an overly strict definition of express authority in this context would improperly "hamstring home-rule municipalities from exercising their home-rule authority in any way that burdens businesses[.]" Majority Op. at 832. An interpretation requiring specific, express authority is contrary to the intent of the General Assembly to give home rule municipalities greater power than if they had opted for other forms of government. As recognized by Justice Todd in her dissent in Bldg. Owners & Managers Ass'n of Pittsburgh v. City of Pittsburgh , 603 Pa. 506, 985 A.2d 711 (2009), a strict application of the Business Exclusion resulting in a "zero-regulation interpretation" would mean Home Rule municipalities have less power than non-home rule municipalities, and would be unable to engage in any meaningful governance. Id. at 716 (Todd, J., dissenting). In light of the above, I therefore agree the PSDA bears a clear nexus with public health concerns, and is thus supported by applicable statutory authority - i.e. , the City's traditional police powers and the Disease Prevention and Control Law of 1955 (DPCL), 35 P.S. §§ 521.1 - 521.21 - sufficient to overcome the Business Exclusion.
Based on these same principles, however, I must depart from the Majority's conclusion regarding the SSBA. In my respectful view, the Majority's determination that the SSBA does not overcome the Business Exclusion is the result of an imbalanced and inconsistent analysis, which I cannot endorse. While the Majority embraces a liberal construction of the City's home rule municipality powers in interpreting the DPCL and resolves all ambiguities in favor of local regulation, thus finding the requisite authority for the PSDA to *844 overcome the Business Exclusion, Majority Op. at 827, the Majority fails to engage in an equally liberal construction when analyzing the City's proffered authority for the SSBA.[1] Rather, the Majority strictly interprets that statutory authority, and concludes it does not expressly allow the SSBA to overcome the Business Exclusion. See Majority Op. at 833-31.
The Majority justifies its disparate treatment of the PSDA and SSBA as an effort to find a "middle ground" between interpreting the word "express" too stringently or too broadly. Id. at 836-37. I am unable, however, to reconcile what, in my view, is an incongruous analysis of the two ordinances. In fact, the City submits arguably more applicable authority to support the SSBA, which the Majority dismisses in an abbreviated discussion. The Majority's unbalanced treatment is clear from a comparison of its truncated SSBA analysis with its lengthy interpretation of the DPCL to find authority for the PSDA. The Majority's attempt at compromise is admirable but problematic, and will undoubtedly result in continuing disparate application and subjective judicial interpretation.
In my respectful opinion, judicial review should only be concerned with determining if the particular ordinance that imposes requirements on businesses is authorized by existing statutory authority. Further, the analysis must always be conducted by liberally construing any ambiguities in the enabling legislation in favor of the home rule municipality's constitutional right to control its municipal affairs at the local level, and ensure it maintains broader powers of self-government than non-home rule municipalities. See Hartman v. City of Allentown , 880 A.2d 737, 742 (Pa. Cmwlth. 2005).
Under a uniform application, I would hold both the SSBA and the PSDA are supported by the requisite statutory authority to overcome the Business Exclusion. I would thus reverse the Commonwealth Court's entry of judgment on the pleadings.

Non-home-rule municipalities are limited by the separate principle that they are "creatures of the state" with no inherent powers, and can only legislate as expressly enabled by the General Assembly. Schweiker , 579 Pa. at 605, 858 A.2d at 84.

Subsection 2962(f) states, in full, as follows:
(f) Regulation of business and employment.-- A municipality which adopts a home rule charter shall not determine duties, responsibilities or requirements placed upon businesses, occupations and employers, including the duty to withhold, remit or report taxes or penalties levied or imposed upon them or upon persons in their employment, except as expressly provided by statutes which are applicable in every part of this Commonwealth or which are applicable to all municipalities or to a class or classes of municipalities. This subsection shall not be construed as a limitation in fixing rates of taxation on permissible subjects of taxation.
53 Pa.C.S. § 2962.